## Commonwealth *versus* Freedley's Executors.

A valuation of real estate subject to a collateral inheritance tax, and an appraisement of the personal estate, was made in pursuance of the provisions of the 12th section of the Act of 10th April, 1849, or of the 2d section of the Act of 11th March, 1850, and the same was not appealed from to the Register's Court within thirty days. It was *Held* that the said valuation and appraisement was final and conclusive, as well against the Commonwealth as the individuals interested; and though the same property, real and personal, which had been appraised, increased in value, as ascertained by sales made by the executors under the directions of the will of the decedent, the increased value was not subject to additional taxation under the Acts relative to collateral inheritances.

ERROR to the Common Pleas of *Montgomery county.*

This was a case stated between the Commonwealth of Pennsylvania as plaintiff, and Henry Freedley and others as executors of the will of John Freedley deceased, as defendants, in order to ascertain whether the estate of the said decedent was liable to taxation, under the Acts relating to collateral inheritances, on its increased value as ascertained by sales made after it had been valued and appraised under the 12th section of the Act of 10th April, 1849.

The following facts were agreed upon.

John Freedley, late of the borough of Norristown, died December 8th, 1851, having first made his last will and testament, which was duly proved before the Register of Wills of Montgomery county, on the 17th day of December, 1851.

The testator died seised of very considerable real and personal

[Commonwealth *v.* Freedley's Executors.]

estate, a large part of which it is admitted was subject to collateral inheritance tax under the laws of Pennsylvania.

Immediately after the probate of the will and granting letters testamentary thereon, to wit, on the same day, the register of said county appointed W. Rossiter appraiser, under the Act of Assembly providing for the appraisement of estates liable to such tax.

The appraisement made by Rossiter, filed 23d January, 1852, amounted to $255,746.03, and it is admitted that such appraisement was just and conscionable, and made (as was believed) according to the market or selling prices of stocks and real estate at the time of testator's death.

Since the making of said appraisement, the defendants have proceeded under the directions of the will, and made sale of nearly all the stocks and real estate belonging to said testator's estate, and have found that parts thereof have greatly increased in value, and other parts thereof declined, but that the excess of increase over the appraised value will be about thirty thousand dollars.

The question for the opinion of the Court was "whether the defendants are bound to pay to the Commonwealth, collateral inheritance tax upon such increase over and above the appraisement?" If the Court shall be of opinion that such increase is subject to tax, then judgment to be entered for the plaintiff for fourteen hundred seventy-one dollars and eighty-four cents, ($1471.84.) If the Court shall be of opinion that such increase is not subject to such tax, then judgment to be entered for the defendants.

The Court below, on November 30, 1852, entered judgment in favor of the defendants upon the case stated.

The appraisement was of stocks, loans, bonds and mortgages, judgments and other personal property, exceeding $160,000, and the valuation of the real estate exceeded $94,000.

It was assigned for error that the Court erred in entering judgment for the defendants in the case stated.

The Act of 1826 was the first Act taxing collateral inheritances. The tax imposed by it was $2\frac{1}{2}$ per cent. on *the clear value* of the estates. The Act of 22d April, 1846, increased the tax to five per centum. In the Act of 10th April, 1849, provision was made for fixing the value of the real estate and appraising the personal estate. The provision in the 12th section is as follows:

" That in order to fix the valuation of the real estate of persons whose estates are or shall be subject to the payment of a collateral inheritance tax, by the laws of this Commonwealth, the register of wills, of the county in which letters testamentary or of administration shall be granted, shall at the same time appoint one of the

[Commonwealth *v.* Freedley's Executors.]

appraisers, whose duty it shall be to put a fair valuation on said real estate; and the assessor of the ward or township in which such decedent died, shall be another appraiser; and it shall be the duty of said appraisers to make a fair and conscionable appraisement of *the personal estate* of the decedent; and it shall further be the duty of said appraisers to assess and fix the then cash value of all annuities and life estates, growing out of said estate, upon which annuities and life estates, the collateral inheritance tax shall be immediately payable out of the estate, at the rate of said valuation; and the said appraisers shall then be paid for all services performed by them in the city of Philadelphia and the incorporated districts, and in the other cities and several seats of justice within this Commonwealth, at the rate of one dollar per day, and in the several counties within this Commonwealth, at the rate of one dollar and fifty cents per day. *Provided,* That any person or persons dissatisfied with said appraisement or assessment, shall have the right to appeal within thirty days to the Register's Court of the proper county, on paying or giving approved security to pay all costs, together with whatever tax shall be fixed by said Court."

In section 2d of the Act of 11th March, 1850, it is provided, viz.: Instead of the appraisers directed by the twelfth section of an Act passed April 10, 1849, &c., the register of wills of the proper county shall appoint an appraiser as often as, and whenever occasion may require, who shall perform all the duties required by the said section. *Provided,* That the right of appeal established by the 12th section of the Act of 10th April, 1849, shall continue as provided by said Act.

*B. C. Chain,* for the Commonwealth.—It was stated that the tax was to be assessed upon the clear value of the estate, and that such value was what remained after the payment of debts, expenses of administration, &c. If there were a deficiency below the appraisement, it should be credited; and if an excess, it is a part of the *clear estate.* It was alleged that *the appeal* authorized, seemed to refer principally to the appraisement of annuities and life estates. Also, that the construction of the Act by the Court below would, in numerous cases, tax the creditors of the decedent; as where an estate turns out to be *insolvent,* which was when appraised considered to be solvent. "In this estate the appraisement is upwards of $255,000. The debts and expenses of administration will amount to—say $55,000." It was alleged that the *clear value* of an estate is what it is worth in the hands of the executors or administrators, at the settlement of the same, and that it includes any excess there may be over the amount of the appraisement.

*Stinson* and *Boyd,* for defendants, the Court declined to hear.

[Commonwealth *v.* Freedley's Executors.]

The opinion of the Court was delivered by

WOODWARD, J.—The Acts of Assembly of 7th April, 1826, and 22d April, 1846, relating to collateral inheritance taxes, assess the tax at a fixed rate on the "*clear value*" of the estates described in the acts. But how shall the clear value of the estate be ascertained? The legislature undertook to answer this question by the 12th section of the Act of April 10, 1849, entitled an Act to create a Sinking Fund, &c. As amended by the 10th section of the Act of 11th March, 1850, relating to collateral inheritance taxes, this 12th section requires the Register to appoint an appraiser as often, and whenever occasion may require, for three purposes: 1st. To put a fair valuation on the real estate subject to the tax. 2d. To make a fair and conscionable appraisement of the personal estate. 3d. To assess and fix the then cash value of all annuities and life estates, growing out of said estate. From this appraisement and assessment any person, dissatisfied therewith, has a right to appeal to the Register's Court, within thirty days, on paying or giving security for costs and taxes.

That the assessment of the appraiser is to be final, if not appealed from, is shown by the Act declaring that it is made "to *fix* the valuation of the real estate"—that the appraisement of the personal estate is to be "fair and conscionable," and that the tax on annuities, and life estates, is to be "immediately payable out of the estate at the rate of said valuation." But property subject to the tax may be fraudulently concealed, accidentally overlooked, or may not be known to the representatives of the decedent at the time of the appraisement, and, therefore, the Register is to appoint an appraiser "as often as, and whenever occasion may require." Whenever portions of the estate come to light after the first appraisement, they are to be appraised in the same manner, but as to such portions as were the subject of appraisement, the "clear value" is fixed, and the law assesses the tax of five per cent. Like the assessment of taxes for state and county purposes, the property subjected is, first, to be found, then valued and appraised, and then taxed; but, instead of officers assessing a rate of taxes on the ascertained property, and valuation according to the public necessities, the law, in this instance, assesses a fixed rate.

Such is the system provided for collateral inheritance taxation, and it does not admit of opening, to take in additions to the clear value of property once assessed. That property is vested in the heir or devisee. If it appreciates, after it comes to him, it is his good luck,—if it depreciates, it is his misfortune; but, as the state would not submit to a reassessment for the purpose of diminishing her tax in the event of a subsequent depreciation, she is not entitled to a reassessment for the purpose of increasing it by reason of an advance in the market value of the estate, after

[*Commonwealth v. Freedley's Executors.*]

an assessment by officers of her own appointment, with the right of appeal. The Commonwealth is as much subject to rules of equity and justice, as her citizens. She possesses the taxing power, but when it has been fairly applied, according to her own dictation, it is spent and gone. Having taken five per cent. of the decedent's estate, according to its clear value, as fixed and conscionably appraised, she cannot return at intervals to take from the new owners five per cent. of what their skill and industry, or good luck, may have added to its value. If she may, when are such returns to cease? And at what intervals are they to occur? How long and how often are heirs and devisees to be subject to such visitations? The law has prescribed no rule for tortures of this sort, and, therefore, they may not be inflicted.

The judgment is affirmed.