MIFFLIN COUNTY.

JULY TERM, 1882, No. 97.                      MAY 24TH, 1882.

# Fosselman's Appeal.

1. An appraiser of collateral inheritance tax filed his appraisement, which set forth: "This does not include note of two thousand dollars, dated October 2d, 1879, which is claimed by Isabella Fosselman, niece of decedent, and is in litigation on the ground that it was delivered to her before the death of decedent." It was subsequently judicially determined that Isabella Fosselman got title to the note by bequest. The appraiser then added the amount of the note to his appraisement, more than a year after it had been originally filed. *Held*, that the Commonwealth was entitled to recover the collateral inheritance tax, though it had not appealed from the original appraisement.

2. The decision of the appraiser was suspended, and the limitation only began to run from the date at which the note was added to the appraisement.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Isabella Fosselman from the decree of the Orphans' Court of *Mifflin County*, in the matter of the assessment of collateral inheritance tax on the estate of Elizabeth Fosselman, deceased.

Elizabeth Fosselman died in January, 1880, leaving a last will and testament dated July 17th, 1878. In it she made certain devises and bequests to her niece, Isabella Fosselman, who lived with her. The appraisers of her estate found an envelope on which was indorsed in her handwriting: " Dear

[Fosselman's Appeal.]

Bella: This is for you to open." Inside of the envelope was the note of a third person for $2000, and a writing in the hand of the testatrix saying:

"My wish is for you to draw this $2000, for your own use, should I be called off sudden.

　　　　　　　　　　　　" ELIZABETH FOSSELMAN."

The collateral inheritance tax appraiser appraised the other property devised and bequeathed to Isabella Fosselman, and reported in his appraisement, filed May 5th, 1880: "This does not include note of two thousand dollars, dated October 2d, 1879, which is claimed by Isabella Fosselman, niece of decedent, and is in litigation on the ground that it was delivered to her before the death of decedent."

In a feigned issue, framed to determine whether or not there was a good testamentary disposition of the note, this Court (1 Pennypacker, 77) decided in the affirmative. The collateral appraiser then, August 17th, 1881, added to his appraisement: "By a decree of the Court, the note of $2000 was ordered to be paid to Bella Fosselman, and I now include it in my appraisement."

There was no appeal from the original appraisement, and Isabella Fosselman paid the tax as assessed in it.

Upon answer setting forth these facts, the register of wills rendered judgment against the Commonwealth. The Commonwealth excepted to this ruling, and the Court below, BUCHER, P. J., reversed the decision of the register, and directed that Isabella Fosselman pay a tax of five per cent., and penalty of five per cent. since August 17th, 1881, in all, $101.25.

Isabella Fosselman then appealed, assigning as error this decree.

*A. Reed*, for the appellant.

The appraisement filed in the register's office on the 5th day of May, 1880, was a regular appraisement. It purports to appraise the whole estate of Elizabeth Fosselman, for it was all liable to appraisement, there being no lineal heirs. The note in controversy was laid before the appraiser, with the facts in relation to it. The appraiser did not appraise it, and sets forth in his return that he did not, and also sets forth the reason he did not, viz., " that it was delivered to appellant before the death of the decedent." It was an honest decision. The ordinary mind would naturally decide that a note placed in an envelope with written directions to the person to draw the same, and securely sealed and ad-

dressed to the person, was a delivery of the note. There is no doubt but that the decedent intended that the appellant should have the note, as a reward for her services, without going through the process of administration. The Commonwealth accepted the results of the appraisement by receiving from the appellant and other legatees the tax assessed by it on the balance of the estate. The decision of the appraiser that the note in question was not subject to tax was a matter that could have been appealed from.

The Commonwealth cannot, after more than a year has gone by from the time of appealing, have a second appraisement of the same thing that had been adjudicated in the first appraisement.

The appraisement is as conclusive against the Commonwealth as it is against individuals, unless appealed from: Commonwealth *v.* Freedley's Executors, 21 Pa. St. R., 33.

Unless an appeal is taken by the proper party within the time limited by law, the decision of the appraiser is conclusive: Commonwealth *v.* Coleman, 52 Pa. St. R., 468.

*John A. McKee*, for the appellee.

For the appraiser to have decided that the note of two thousand dollars was not subject to a collateral inheritance tax, all that was necessary was to omit to mention it altogether. The record would have then shown that he had appraised the whole estate, but he suspends his appraisement until the question is settled by the Courts, and he writes on his appraisement paper, " This does not include the note of two thousand dollars, dated October 2d, 1879, which is claimed by Isabella Fosselman, niece of the decedent, and is in litigation on the ground that it was delivered to her before the death of the decedent." This was deciding nothing, but stating a simple fact, as he understood it, as a reason why he did not then appraise the note. After the trial of the issue, and the decision of this Court that the papers, taken together, constituted a will, and that the note passed thereby to Isabella Fosselman; then John Baum, on the 17th day of August, 1881, completes his work, and says : "I now include this note in my appraisement." There was but one appraisement, begun in 1880 and ended after the litigation in respect to the note was settled.

JUNE 2D, 1882.—PER CURIAM: The original appraisement did not decide against the liability of the appellant to collateral inheritance tax as respects the alleged gift or assignment for value, but suspended a decision because the matter was in dispute. When it was afterwards settled that the

gift or assignment was a testament, he then decided that it was subject to the tax. The limitation only began to run from the last date.

Decree affirmed and appeal dismissed at the costs of the appellant.


## MONTGOMERY COUNTY.


JANUARY TERM, 1881, No. 173.　　　　　APRIL 18TH, 1882.

# Boud's Appeal.

1. Where the personal property of a decedent is inadequate, the administrator is not entitled, as against a mortgagee of the decedent, to credit for a reasonable amount expended by him out of the proceeds of real estate sold for the payment of debts for the funeral expenses of the decedent.

2. Nor for medical attendance of the decedent.

3. Nor for State, county, and road taxes not a lien.

4. An administrator who mingles the proceeds of real estate sold by him for the payment of debts with his own funds, and uses it for his own benefit, is not entitled to commissions on the amount so used.

Before SHARSWOOD, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. MERCUR, J., absent.

Appeal of William H. Boud from the decree of the Orphans' Court of *Montgomery County*, confirming the report of an auditor appointed to distribute the balance in the hands of the appellant, as administrator of the estate of James Boud, deceased.

The administrator filed his account March 3d, 1880, and Mary L. Shannon, a mortgage creditor, excepted, *inter alia*, to the following items of credit:

1. State and county tax, $23.74; road taxes for 1878 and 1879, $33.78; D. Y. Mowday (coffin), $59.93; Dr. David Schrack's bill (medical attendance), $46; Dr. John Schrack's bill (medical attendance), $5; digging grave and funeral expenses, $35.

2. The accountant is not entitled to $150 commission.

Louis M. Childs was appointed auditor to distribute, and he reported the material facts as follows:

James Boud, the decedent, died September 8th, 1878, and his son, William H. Boud, was appointed administrator. The inventory of the personal property of the decedent