# Estate of Wm. B. Moneypenny.    Appeal of Luke A. Lockwood.

*Collateral inheritance tax—Decedents' estates—Acts of April* 10, 1849, *March* 11, 1850 *and May,* 4, 1855.

Under the Acts of April 10, 1849, sec. 12, P. L. 571, March 11, 1850, sec. 1, P. L. 150, and May 4, 1855, sec. 3, P. L. 425, there cannot, in the absence of fraud, accident or mistake, be a second appraisement of property for the purpose of the collateral inheritance tax. The only remedy for an erroneous exercise of judgment by the appraiser is an appeal.

Where an appraiser for the collateral inheritance tax with a full knowledge of all the facts, erroneously omits from the appraisement land situated in another state which had been converted into personalty under a power of sale in a will, the commonwealth's only remedy to correct the error is an appeal. A second appraisement to revise the judgment of the appraiser is without authority of law.

Argued Feb. 24, 1897. Appeal, No. 605, Jan. T., 1896, from decree of O. C. Wyoming Co., auditor's report book No. 3, page 431, overruling exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report distributing the fund upon final account of the executor of decedent's estate. Before DUNHAM, P. J.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to auditor's report.

*W. E. Little*, with him *C. A. Little*, for appellant.—We concede that the register is to appoint an appraiser " as often as, and whenever occasion may require," but we deny that this exempts the commonwealth from the duty of appealing from an adverse appraisement: Com. v. Freedley's Executors, 21 Pa. 33.

Collateral inheritance tax accrues (under the acts in force previous to 1887) at the decease of the person whose estate, passing to collateral heirs or strangers, is subject to the tax; and this is so whether the estate passes in actual enjoyment, directly or remotely upon the termination of an intervening life estate, or term of years: Mellon's App., 114 Pa. 564; Little's App., 117 Pa. 14.

The first appraisement was an adjudication, and not having been appealed from, it became res judicata : Armstrong Co. v. Overseers, 158 Pa. 92 ; Myers v. Kingston Coal Co., 126 Pa. 582; Rockwell v. Langley, 19 Pa. 502; Schive v. Fausold, 137 Pa. 82; Moyer's Est., 141 Pa. 125; Bolton v. Hey, 168 Pa. 418; Marsteller v. Marsteller, 132 Pa. 517; Com. v. Luzerne Co., 1 Monaghan, 418 ; Hutchinson v. Com., 6 Pa. 124 ; Com. v. Penna. Co., 145 Pa. 266 ; Herman on Estoppel, p. 405, sec. 352.

The decision of the auditor (register, appraiser and court) is conclusive, and cannot be inquired into, either by the same tribunal at another time, or by a court of law, except on appeal: Herman on Estoppel, sec. 352; Emery v. Nelson, 9 S. & R. 12; Lawver v. Walls, 17 Pa. 75 ; Blackmore v. Allegheny County,

51 Pa. 160; Northampton County v. Yohe, 24 Pa. 305; Porter v. School Directors, 18 Pa. 144; Leasure v. Mahoning Twp., 8 Watts, 551; Luzerne County v. Rhoads, 1 Kulp, 437; Northumberland County v. Bloom, 3 W. & S. 542; Siggins v. Com., 85 Pa. 278; Short v. Gilson, 107 Pa. 315; Gord v. Middleman, 25 W. N. C. 556; Bolton v. Hay, 168 Pa. 418–421.

*E. J. Jordan*, for appellee.—Under the will and codicil of Mr. Moneypenny, the real estate situate in the city of New York, and from which this fund was derived, was converted into personalty, and on the death of the life tenant was brought into the court below for distribution, and the legacies arising therefrom going to collateral heirs would ordinarily be liable for such tax: Miller v. Com., 111 Pa. 321; Williamson's Est., 153 Pa. 508.

The Act of April 10, 1849, P. L. 570, is the first act requiring the register of wills to keep a record. This duty is further referred to in the acts of 1855 and 1877 in practically the same language. The object of these different provisions is to preserve a record of liens so as to protect purchasers of real estate, because it is only as against purchasers of real estate that the tax not sued for within twenty [now five] years " ceases to be a lien." As to the parties originally liable for the tax the lien thereof remains "until settled and satisfied": Cullen's Est., 142 Pa. 18; Butler's Est., 14 Pa. C. C. Rep. 667.

It is the appraisement that fixes the amount of liability of the estate, not the record made by the register.

The cases cited by the appellant like Com. v. Freedley's Exrs., 21 Pa. 33, simply hold that where property has been once fairly assessed, although grossly inadequate, the appraisement thereof is conclusive on the whole world unless appealed from. The case of Fosselman's Appeal, 2 Pennypacker, 238, cited by the appellant seems to us rules this case in our favor.

That the personal responsibility of the heirs, devisees and legatees for the collateral inheritance tax is a continuing one has been pointed out in Cullen's Est., 142 Pa. 18; Butler's Est., 14 Pa. C. C. Rep. 667.

The case of Mellon's Appeal, 114 Pa. 565, holds as against bona fide purchasers only; the tax not having been sued for in twenty years after the death of the decedent, the claim is barred.

A record which imports absolute verity, and is not the subject of contradiction—such a record as is the subject of consideration by appellant — is a record actually or potentially made up under the eye of a judge, after argument before him, and due consideration thereof: Fleming v. Parry, 24 Pa. 52; 20 Am. & Eng. Ency. of Law 475; Carmony v. Hoober, 5 Pa. 305; Stark v. Fuller, 42 Pa. 320; Converse v. Colton, 49 Pa. 346; Thorne v. Travelers' Ins. Co., 80 Pa. 30; Coleman's Appeal, 62 Pa. 273; Eckman v. Eckman, 68 Pa. 468; McDermott v. Hoffman, 70 Pa. 31; Follansbee v. Walker, 74 Pa. 306; Farrington v. Woodward, 82 Pa. 259; Township of Girard v. Borough of Girard, 86 Pa. 26.

*W. E. Little*, with him *C. A. Little*, for appellant, in reply.— The commonwealth's claim for tax was upon the net balance of the estate, as a whole, not upon the separate items of property from which such balance might be obtained. In other words, its demands thereon were not severable, and not being such it must be as much concluded by the first appraisement as were the heirs: Haneman v. Pile, 161 Pa. 599; Hill v. Joy, 149 Pa. 243; Ahl's App., 169 Pa. 609; Converse v. Colton, 49 Pa. 346; Hoirland v. Fidelity Ins. Trust & Safe Deposit Co., 108 Pa. 236.

OPINION BY MR. JUSTICE MITCHELL, May 24, 1897:

The decedent died in 1884, and in the same year an appraiser was appointed and the collateral inheritance tax on personal property assessed and paid. Nearly twelve years afterwards a new appraiser was appointed by the register of wills, and made an appraisement of the proceeds of real estate in the city of New York which had been sold by the executors under the directions of the will, upon the expiration of certain life estates. The ground of this second appraisement was that the New York land had been converted into personalty by the testator's direction to sell and that the first appraiser had omitted it. The fact of such omission was conceded. The auditor found expressly that the omission was not induced by any fraud or concealment, and the undisputed evidence shows that it was not the result of accident or of mistake in any proper legal sense but was done intentionally by the appraiser upon his view of

the law. The error, if there was one, was due to the appraiser's erroneous judgment, deliberately reached upon knowledge of all the facts. The commonwealth seeks, and the court has sustained, a second appraisement to revise this judgment of the appraiser. Clearly this cannot be done. The plain statutory remedy for such a case is not a second appraisement, but an appeal from the first. It does not admit of doubt that if the commonwealth had appealed, the court would have reviewed the appraiser's action and corrected any error. This fact alone is conclusive that an appeal was the proper and exclusive remedy. How strictly parties in such case are confined to the statutory procedure is shown by Com. v. Coleman, 52 Pa. 468, where the appeal was taken in time but by the administrator instead of the devisee, and the court below having reduced the assessment, the judgment was reversed, this court saying, " the effect of this will be to confirm a valuation which we fear was excessive and which, if we could enter into the question we would be likely to reduce somewhat if not as much as the court below. But as the record is, our judgment must be a reversal."

But there is another reason why this proceeding cannot be sustained. The statutes do not contemplate or provide for more than one appraisement. On the contrary the intent is that the first shall be complete and final. By the Act of April 10, 1849, sec. 12, P. L. 571, in force in 1884, " in order to fix the valuation of the real estate of persons whose estates are subject to the payment of a collateral inheritance tax " the appraiser is required not only to " put a fair valuation upon said real estate," and " make a fair and conscionable appraisement of the personal estate of the decedent" but also " to fix the then cash value of all annuities and life estates growing out of said estate, upon which annuities and life estates the collateral inheritance tax shall be immediately payable out of the estate at the rate of said valuation." By the next section, where any life estate is left to a person not taxable " and the remainder over to collateral heirs at their decease, immediately after the death of the testator, the estate so granted shall be appraised . . . . and the collateral inheritance tax on the remainder shall be immediately due and payable." It will thus be seen that nothing was allowed to escape or even to be postponed. Real estate whether in possession or in remainder, in fee or for life, annuities and personal

property, everything taxable at all was to be included in the appraisement, which thus was not only to be exhaustive but necessarily final. The commonwealth did not intend to wait and take its tax in instalments as the annuities and profits of life estates accrued to their owners, or estates in remainder came into possession, but required everything to be appraised at the standard of its present cash value, and then exacted payment of the whole tax at once. The hardship of this law upon remaindermen was so manifest that by the Act of March 11, 1850, sec. 1, P. L. 150, an exception was made in their favor, by which it was declared lawful for them " to elect to wait their coming into the actual possession," and to defer payment upon giving security for the tax with interest from the time it accrued until paid. Even by this act however nothing was postponed but the date of compulsory payment. The tax was still left due upon the testator's death, was still to be included in the appraisement and was to bear interest until paid. To avoid misunderstanding it may be well to note that the present case arose before the act of 1887, and any changes introduced by that act are not discussed.

The legislative intent that the appraisement should include everything and be final, is further illustrated by the provision for the collateral inheritance record book. By section 15 of the act of 1849, the register of wills is required to enter in a book, to be kept for that purpose, the returns of appraisers, and to open an account in favor of the commonwealth against the decedent's estate, and the tax so ascertained is to be a lien until paid. The register is also to give certificates of search from this book. And by the Act of May 4, 1855, sec. 3, P. L. 425, the register is required " to keep and leave in his office, as a public record, the book containing the charges and credits for collateral inheritance tax." The account of the commonwealth against the present estate was opened in this book, and the entries showed the assessment and payment of the collateral inheritance tax " on personal property subject to tax." It was strenuously argued for appellant that the entry must be understood as an assessment of the whole personal estate, and that being a record it could not be contradicted by showing the appraiser's failure to include the proceeds of the New York land. It is not necessary in the view we take, for us to con-

sider how far a public record of this kind is invested with the attribute of unimpeachable verity that belongs to judicial records, and the subject is adverted to only as a further illustration of the legislative intent as to the completeness and finality of the first appraisement. The plain intent of the requirement of this book and searches to be given therefrom, is to liquidate and give certainty to the tax, which is a lien, and to show for the protection of all parties interested the amount of the tax, the date of its assessment, the estate subject to it, the parties liable for its payment, and the fact whether paid or not. In thus making provision for information upon which parties interested, as purchasers or otherwise, could safely act, the legislature did not contemplate the destruction of the vital element of certainty, by the possibility of a second appraisement, as in this case, nearly twelve years after the apparent closing and satisfaction of the whole claim by the payment of the tax formally and regularly assessed.

The collateral inheritance tax has been in force for nearly three quarters of a century, but there is no case in our books sustaining a second appraisement. In Bittinger's Est., 129 Pa. 338, the statement of the case calls the appraisement " a supplementary " one, but the facts in regard to it nowhere appear in the report, and the whole appraisement was declared void for want of jurisdiction over the property. In Fosselman's Appeal, 2 Penny. 238, the appraiser intentionally omitted a certain note, stating in his return that he did so because of litigation as to whether it had been given to the appellant by the decedent in her lifetime. The tax was assessed on the rest of the estate, and paid. After the ending of the litigation, he added the note to his appraisement, and the legatee appealed. It was argued there as here that the first return must be treated as conclusively covering the entire taxable estate. It is notable that the argument for the appellee there was not a defense of a second appraisement, but that there was only one. And so this court held, saying " the original appraisement did not decide against the liability to tax . . . . but suspended a decision because the matter was in dispute. When it was afterwards settled that the gift or assignment was a testament, he then decided that it was subject to the tax. The limitation only began to run from the last date."

On the other hand in Com. v. Freedley's Exrs., 21 Pa. 33, the tax was assessed and paid shortly after decedent's death, but upon sale by the executors the value proved to be much greater than the appraisement, and the commonwealth claimed the tax on the excess, but this court held that the appraisement, unappealed from, was final. In the opinion it is said that "property subject to the tax may be fraudulently concealed, accidentally overlooked, or may not be known to the representatives of the decedent at the time of the appraisement" and "whenever portions of the estate come to light after the first appraisement they are to be appraised in the same manner, but as to such portions as were the subject of appraisement the 'clear value' is fixed." This language however is intended to apply to the classes of fraud, accident or mistake which in equity are sufficient to open all transactions to re-examination and correction. The exceptions that it makes are not founded on any provisions of the statutes but on the general principles of law, and clearly do not include cases like the present where there was no fraud, accident or mistake, but at most an erroneous exercise of judgment by the appraiser. For that, the only remedy under all our cases, was an appeal.

We are therefore of opinion that the first appraisement exhausted the commonwealth's power, and the second and all the proceedings under it were void for want of authority.

There are other objections to the second appraisement, but we do not consider them, as they were not assigned for error, and our views are fully set forth in Handley's Estate, infra.

Decree reversed and proceedings set aside, at costs of appellee.