## Lowenstein's Estate.

*Landlord and tenant—Covenant to pay water rent—Assessment.*

1. Where a lessee covenants to pay "all water taxes assessed" on the demised premises, and the city where the property is situated assesses water taxes at the beginning of the last year of the term and no appeal is taken from the assessment, and the amount is certified to the collector of delinquent taxes, the lessee is not liable for anything in excess of the assessment, although an increased consumption of water during the year leads to a higher assessment for the following year.

2. The system provided by the Acts of February 20, 1857, P. L. 56, March 22, 1877, P. L. 16, and June 4, 1901, P. L. 364, for charging upon land water rates, water taxes or water rents, does not contemplate the making of two levies or assessments for the same year but only a single levy or assessment at the beginning of the year.

Argued April 30, 1906. Appeal, No. 228, April T., 1908, by S. W. Vandersaal, from decree of O. C. Allegheny Co., Oct. T., 1906, No. 58, sustaining exceptions to adjudication in estate of David S. Lowenstein, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

MILLER, J., filed the opinion of the court, which was as follows: "To pay as due all water taxes assessed on the said premises"

is the measure of the legal liability of the Lowenstein partnership under their lease with the claimant. This means a legal assessment made by the proper authorities on these premises during the continuance of the lease in accordance with the provisions of the acts of assembly, or ordinances of the city of Pittsburg.

The Act of February 20, 1857, P. L. 56, empowers councils of the city of Pittsburg to adopt schedules of rates by which all water rents shall be assessed to the owners and shall be a lien upon the premises.

The fourth section of the Act of March 22, 1877, P. L. 16, provides that water rents for cities of the second class shall be levied in January or February of each year for the succeeding fiscal year beginning April 1. The sixth section of the same act provides that water rents shall be payable during the month of June of each year.

From the levy or assessment thus made there is no relief save by exoneration as the act provides. The assessment made in accordance with the act of assembly is a lien from April 1, whether entered or not; if unpaid in the delinquent tax collector's office the lien is filed of record and collection can be enforced as in the case of any other municipal claim. The levy or assessment once made remains fixed for that period. The system of taxation relating to this branch of municipal claims is complete and entire, and the assessment so made concludes the taxing power with respect thereto for that period. By analogy the rule laid down in Moneypenny's Estate, 181 Pa. 309, relating to collateral inheritance tax, is applicable here. The taxing power having an estimate of receipts and expenditures presumptively in its hands, before December 31 preceding, exercises its legal right to fix the tax levy and assessment for the ensuing year upon every subject-matter within its grasp, water rents, of course, included. This is a general principle, and applies to all legal assessments for taxable purposes.

The evidence of McClain from the delinquent tax office and of the representatives from the water department clearly shows that whatever excess or deficit the meter reading indicated after the period for the assessment of taxes is not added to or taken

from the assessment levied and fixed; but it is made part of or used as the basis for the following year's levy or assessment, and rebuts claimant's contention that the assessment is a mere estimate.

The controversy here is limited to water rents assessed for the year 1906, that is, beginning with April of 1906 and ending with March of 1907. Every exhibit offered from the water assessment department, or from the delinquent tax office, shows on its face that the assessment for the year 1906, being the period covered by this lease, is $1,050. It particularly appears from exhibit No. 13 that the additional water used for the latter part of 1906 fixed the water assessment for 1907, beginning with April 1 of that year. There is no pretense on the part of the water department or the delinquent tax collector's office to include the alleged overconsumption for part of 1906 assessment in the levy for that year; but to make it the assessment for the year following, the land being liable in either case.

The question before us is not what it might seem ought to be paid for excess water used, as ascertained after the assessment had been made, but what are the terms of the covenant binding the tenant to pay. As between the owner and the tenant of these premises the additional estimates are not within the terms of the lease. The stipulation is to pay water taxes assessed, not estimated, during the continuance of the lease; there is no stipulation to pay for the amount used.

Nor are we concerned with what the claimant should pay the city to have his premises freed from the lien of the assessment for 1907. This estate's liability under the lease is the sole matter at issue; it is determined by ascertaining the water tax assessed during the term of the lease. As that is $1,050, so must be the award in favor of the claimant, including any penalty and costs thereon for delinquency.

OVER, J., filed a dissenting opinion as follows:

When the lease on which the claim of S. W. Vandersaal is founded was made water was furnished by the city on the premises for a fixed yearly rate, for which an assessment was made at the beginning of the year. Subsequently the system was

changed, a meter installed on the premises, the amount of water furnished measured by it, and a charge made for the water actually used. Under this system an estimate was made of the amount which would probably be due the city for water used during the year, and this amount assessed against the property, the water tax being a lien thereon. But this was only a conditional assessment, and if the amount assessed was paid, and at the expiration of the year the charge for water used as shown by the readings of the meter was less than the amount assessed, the excess payment was refunded, or if it were more, the amount due in excess of the conditional assessment was added to the assessment for the next year and was payable with it. If the conditional assessment is final and conclusive as to the lessor in the lease it is also as to the lessee, and an injustice might be done to the lessee as well as the lessor. To illustrate: Suppose that by the readings of the meter in this case the city was only entitled to $200 for water used during the continuance of the lease, that amount is all the claimant would be compelled to pay the city, and yet he under the covenants in the lease could recover from the lessee $1,025, the amount of the assessment. If, however, the covenant to pay the water tax assessed on the leased premises be construed with reference to its purpose, such a result is avoided. Its purpose is to compel the lessees to pay the charges of the city for water used on the premises by them during the continuance of the lease; the amount claimed here for water rent seems to be within the intent and meaning of the covenant, and the lessees are liable therefor.

The exceptions to the decree should, therefore, be dismissed.

*Error assigned* was decree sustaining exceptions to adjudication.

*Willis F. McCook*, for appellant.

*M. R. Trauerman*, with him *Alfred Cahen* and *C. S. Crawford*, for appellee.

OPINION BY RICE, P. J., February 26, 1909:

Upon the distribution of the decedent's estate, S. W. Vander-

saal, the appellant, presented a claim arising out of a lease for the term of three years from January 13, 1904, made by him to the decedent and others constituting a partnership, wherein the lessees covenanted as follows: "The lessees also agree to pay as due, all water taxes assessed on the said premises, and to pay for all gas, and electric light used thereon, and will make all necessary repairs to the said building, machinery, fixtures, appliances, etc., contained in said building, or on the premises, and will keep the premises clean, free of rubbish, and in such condition as the board of health may require, during the term, and if the lessor pays for the same or any part thereof, it will be additional rent payable forthwith." The claim was for the unpaid water rent of 1906, which it is admitted has become a lien on the lessor's premises. The controversy is as to the amount which under his covenant the decedent was bound to pay. The appellee insists that the amount was fixed by an assessment made by the proper city officials in 1906 for the fiscal year beginning April 1. The appellant's contention is that this was not a final assessment in the meaning of the statute governing the subject, but was merely a preliminary estimate, or at the most a conditional assessment, and that the water rent for that year was in fact included in the assessment made in March, 1907. But as the latter assessment was not made until after the term of the lease had expired, it was not literally within the decedent's covenant. While we think it quite clear that the decedent's covenant cannot be construed as binding him, in the absence of a valid assessment, to pay for all water used upon the premises during the term, yet, it must be admitted, there is plausibility in the counsel's contention that where the term of the lease and the fiscal year do not expire at the same time, the date of the assessment for water rent ought not to be absolutely controlling in the construction of such a covenant. We need not decide the latter point, however, for the objection the appellee makes to the appellant's claim for the water rent of 1906, so far as that claim is based on the assessment made in 1907, is not merely that the latter was made after the term of the lease had expired, but that a previous assessment of water rent for the year 1906 had been made during the term from which

no appeal was taken. If this be the fact, we can see no escape from the conclusion that that assessment is, as between the parties to the lease, conclusive of the amount the lessees were bound to pay in order to discharge their covenant obligation. Presumably the parties had in view the principle enunciated in Moneypenny's Estate, 181 Pa. 309, and recently reiterated in Schmuck v. Hartman, 222 Pa. 190, and contracted with reference to the statutory provisions relative to water rent assessments in the city of Pittsburg which became a lien upon the premises to which the water was furnished, and particularly those provisions directing water rents for the ensuing fiscal year to be levied in January or February, fixing the time when they became payable and should be deemed delinquent, making them a lien upon the real estate, directing when they should be placed in the hands of the delinquent tax collector for collection, and fixing the time within which the claim therefor must be filed in the prothonotary's office. It is enough to say, without going into an elaborate recital of these statutory provisions, that the system provided by the Act of February 20, 1857, P. L. 56, the Act of March 22, 1877, P. L. 16, and the Act of June 4, 1901, P. L. 364, for charging upon land water rates, water taxes or water rents, does not contemplate the making of two levies or assessments for the same year but only a single levy or assessment at the beginning of the year. If there is any statutory provision applicable to the case which changed the law as to the lien of water rents, rates or taxes assessed upon the premises in which a meter is installed, and in such case authorized a conditional assessment to be made at the beginning of the year and a final one at the end of the year, it has not been called to our attention. It will be seen from the foregoing observations that the case turns largely on the interpretation of the acts of the city relative to the subject-matter in controversy, namely, the water rent charged on the premises in 1906. The record in the bureau of water assessments, department of public works, of what is claimed to be the assessment made in that year is somewhat obscure. It shows the meter record of the quantity of water used during the year 1905, the cost of the water ($1,048.24) computed at meter rates, the estimate

($3,200.84) of the water rent for that year, inferably made at the beginning of the year, and an exoneration of the difference. Then appear the words and figures "Est. for 1906, $1,050." This was the amount certified by the department to the city treasurer and by him to the collector of delinquent taxes, as the water rent charged against the premises for the year, and the latter so entered it in his record and proceeded to collect it. This assessment, as under all the evidence we think it must be deemed, was apparently based on the consumption of water during the preceding year as shown by the meter record. When the time came for making the assessment for the year 1907, the department ascertained from the meter record during the time it was in operation in 1906 and by estimates during the part of the year it was not in operation, the quantity of water, approximately, used in that year, computed the cost at meter rates, deducted from this sum $1,050, which as we have seen was put in process of collection as the amount of the assessment for 1906, and added to this remainder the estimate for 1907. The total thus arrived at was denominated in the statement of delinquent taxes as water rent for 1907, and viewed in the light of the record of the department of public works, as well as the testimony of the officials, it must be so regarded. Whether made on a proper basis or not, it was not in any proper sense a revision, an alteration or an amendment of the assessment of 1906. The latter remains unchanged and outstanding. If the decedent had paid it when it was certified to the delinquent tax collector, he would have discharged his covenant obligation to pay as due all water taxes assessed on the premises during his term, and nothing occurred since which enlarged his obligation so as to include any part of the assessment imposed in 1907 after his term expired.

The opposing views regarding this case are well set forth in the opinions filed by the learned judges below. But upon full consideration we are led to concur in the conclusion reached by the majority, and substantially for the reasons set forth in their opinion, to which we refer.

The decree is affirmed at the costs of the appellant.