## Dunkle's Estate.

*Theodore L. Wilson,* for exceptant,

HARVEY, P. J., October 18, 1930.—This comes before us upon exceptions of the register of wills to the report of the auditor appointed to audit the first and final account of J. H. McElwaine, executor of the last will and testament of Catherine Dunkle, late of Perry Township, Clarion County, Pennsylvania, deceased, and to distribute the funds in the hands of accountant to and amongst the parties entitled thereto.

At the hearing before the auditor were offered the will of the decedent, the inventory and appraisement of assets belonging to the estate, the appraise-

ment on the part of the Commonwealth (for transfer inheritance tax), and the account of the executor of said estate filed at No. 9, December Term, 1929.

The account of the executor shows as follows, to wit:

| | |
|---|---|
| Total assets.................................... | $984.95 |
| Total credits claimed........................... | 190.01 |
| | |
| Balance for distribution to heirs and devisees.... | $794.94 |

On the audit certain adjustments were made with respect to both charges and credits claimed, viz.:

Deduction from assets:
Gas rental accrued after death of decedent.......... $41.65
Deductions from credits asked:
Personal property taken not appraised............. 11.50

| | |
|---|---|
| The difference to be deducted from total set out in executor's account........................ | 30.15 |
| | |
| Amount in executor's hands belonging to estate...... | $764.79 |
| Deduct for costs of audit.......................... | 73.38 |
| | |
| Balance for distribution....................... | $691.41 |

The whole of decedent's estate, real and personal, was devised to her husband (not named), "to have and to hold during his natural life. He to have the rent, issues and profits thereof for and during his natural life."

At the death of the husband, specific legacies were to be paid to certain persons "as they become of legal age (or are so)," viz.: To Mary Harshaw, $100 paid in full; Helen Harshaw, $100 paid in full; Girth (Gerda) Agney, $100 paid in full.

Legacies unpaid set out in auditor's report: to George Milford Harshaw, $25; Grace Harshaw, $25. Residue payable to Catherine Harshaw.

After the death of Mrs. Dunkle, a settlement was made for state transfer inheritance tax upon her estate. In the computation certain items were claimed for deduction, viz.:

| | |
|---|---|
| Undertaker's and funeral costs.......................... | $350.00 |
| Monument in cemetery................................. | 170.00 |
| Medical attendance upon decedent....................... | 28.25 |
| Digging grave....................................... | 20.00 |
| | |
| Total .......................................... | $568.25 |

With these items allowed (together with other costs and expenses), the amount remaining in the estate was $28.75, upon which a tax of 10 per cent. (the heirs being collateral) was assessed, amounting to $2.88, and that amount was paid.

The first and final account of the executor was duly filed and referred to an auditor. The auditor filed his report August 25, 1930. The auditor in his report adverts to the fact that Margaret Curll, Register of Wills, made a claim for additional state transfer inheritance tax upon the estate on the basis of "the amount which goes to the heirs." The auditor disallowed the claim of the register of wills for the additional transfer inheritance tax. The register of wills, tax agent for the state, filed exceptions to the report of the auditor August 25, 1930, as follows:

1. "The Auditor erred in not allowing the transfer inheritance tax of $38.57, with interest thereon at the rate of twelve per cent. per annum from May 15, 1929, to the date of payment for the following reason, to wit:

"The records in this case show that property in this estate to the value of $385.66 passed to and became vested in the heirs without the payment of any tax thereon."

Mrs. Catherine Dunkle died May 15, 1928. Her husband (J. C. Dunkle) died in December, 1928. No appraisement was filed in the estate of Catherine Dunkle until February 25, 1929. The account of the executor was filed October 22, 1929. Aside from personal property belonging to the estate of Catherine Dunkle of the value of $11.50, not appraised, the only credits asked by the executor in his account were entirely the costs and expenses in the administration of the estate.

Of the several items, undertaker, monument, digging grave, doctor's bill, witnesses proving will, register's fees, granting letters, and accountant's expenses, claimed for deduction in computation of state transfer inheritance tax, none were included in credits claimed in the executor's account filed. They were paid by J. C. Dunkle during his lifetime. Who actually paid the $2.88 transfer inheritance tax, assessed on settlement and paid, is not shown. The register of wills does not ask a reappraisement of the estate. She claims solely upon the provisions in the law (Act of June 20, 1919, P. L. 521, section 16, and amendments) : "The executor or administrator, or other trustee, paying any legacy or share in the distribution of any estate of a resident decedent subject to the said tax, shall deduct therefrom at the rate of two per centum upon the whole legacy or sum paid to or for the use of father, [etc.] . . .; and at the rate of ten per centum upon the whole legacy or sum to be paid to or for the use of any other person or persons or bodies corporate or politic, [etc.]." Any state transfer inheritance tax, direct or collateral, shall be upon the "clear value of the property." "In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates shall be the debts of the decedent, reasonable and customary funeral expenses, bequests or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon; reasonable expenses for the erection of monuments or gravestones, grave and lot markers; and the expenses of the administration of such estates." The several allowable items—(1) debts (doctor bill, $28.25; digging grave, $20) ; (2) funeral expenses, $350; (3) monument, $170; (4) expenses of administration, $18—were deducted in the settlement for computation of state transfer inheritance tax. These were all paid by J. C. Dunkle, husband of decedent, in his lifetime, and no account therefor presented against the estate of his wife, Catherine Dunkle. It was by reason of the payment of these items by the husband that there was sufficient to pay the legacies under the will in full. The question to be determined in this instance is, whether or not the items for funeral expenses, monument, doctor bill and digging grave were primarily the legal obligations of the husband, J. C. Dunkle, paid by him and recognized by him as such, and, therefore, no claim made by him for the same against his wife's estate for refund to him, thus leaving in her estate funds with or from which the executor "paying any legacy or share in the distribution" should "deduct therefrom at the rate of ten per centum upon the whole legacy or sum paid to or for the use" of collateral heirs. There is nothing in the will of Catherine Dunkle directing or providing for the payment of her debts and funeral expenses or the erec-

tion of a monument. Neither was there any provision in the will for the payment of the transfer tax on the legacies from the corpus of the estate, thus leaving them subject to the transfer tax. The appraisement for the purpose of state transfer inheritance tax computation was duly made. The items deducted were legally allowable. No other appraisement shall be made unless there has been fraud, accident or mistake in the one made. "The statutes do not contemplate or provide for more than one appraisement. On the contrary the intent is that the first shall be complete and final:" Moneypenny's Estate, 181 Pa. 309, 313. The register of wills does not ask for reappraisement. The sole question is involved in the proposition contained in the paragraph at bottom of page 3 of the auditor's report, viz.:

"If the surviving husband choose to pay the debts of his deceased wife, he is privileged to do this, nor does the fact that these voluntary gifts in his lifetime diminish his estate [we assume in decedent's estate] entitle the Commonwealth to any additional tax."

That a husband is primarily liable for medical attendance, funeral expenses, etc., of his deceased wife, even if she has a separate estate, is well established. Her estate is liable only in case the husband is insolvent. The fact that the husband paid these expenses in the instant case is evidence that he was not insolvent. If a husband voluntarily pays his wife's debts, funeral expenses, monument, etc., thus leaving in his wife's estate means with which to carry out the provisions of her will in the payment of legacies, are we to conclude that no deductions shall be made from legacies and shares in distributions in estates "for the use of the Commonwealth?" (Act of 1919, *supra*, section sixteen, as amended by Act of July 12, 1923, P. L. 1078.) There is no question that had Mrs. Dunkle's estate been held for the payment of funeral expenses, etc., the "clear value thereof as computed in the appraisement for transfer inheritance tax would have been absolutely proper." In Mellor's Estate, first reported in 73 Pitts. L. J. 689, appealed and affirmed in 286 Pa. 149, Judge Trimble's vigorous opinion is most sweeping. We feel, however, that "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision:" Frick's Estate, 277 Pa. 242, 252. In this case, if J. C. Dunkle, the husband, had been the sole beneficiary of his wife's estate he would be allowed, under the law, for deductions of funeral expenses, etc., in arriving at the "clear value" of his wife's estate upon which to compute transfer inheritance tax, and the appraisement and settlement made, unappealed from, would be final. The sole question here is—The husband having voluntarily paid the funeral expenses, doctor's bill and monument, leaving in the estate sufficient to pay specific legacies and a residue payable to a collateral heir, is it the legal duty of the executor to deduct from each legacy ten per cent. for the use of the Commonwealth under section sixteen, as amended by the Act of July 12, 1923, P. L. 1078? Both section two and section sixteen seem equally mandatory. The auditor, in his ruling upon the exception of the register of wills, holds that "His action [husband's action] in paying wife's funeral expenses, etc., is the same as if he had personally advanced to the estate the money necessary to pay the legacies. The addition to the estate caused by the husband of the decedent paying obligations in the amount of $596.25 is not a subject of tax."

Without section sixteen and the Act of June 12, 1923, referred to above, this would be true. The will of Catherine Dunkle made no provision for the

payment of transfer taxes on legacies. Neither the husband nor the administrator of the husband's estate made any claim for a refund of the amounts paid for Catherine Dunkle's funeral expenses, etc. A sufficient amount was in the hands of the executor of the will of Mrs. Catherine Dunkle to pay all specific legacies and a residue for another legatee. A tax of ten per cent. on the amounts transferred to them is payable under section sixteen, *supra.* We construe the intent of the act to be that the tax shall fall upon the person benefited by the legacy or share in distribution, unless provision was made specially otherwise in the will. Therefore, it was the duty of the executor of the estate of Catherine Dunkle to have retained from each of the legacies and the share in the residuary estate bequeathed in the will of Catherine Dunkle ten per centum to be paid over to and for the use of the Commonwealth. We cannot see that any claim or deduction was made for the $2.88 transfer tax assessed at the settlement and stated in the auditor's report to have been paid. If it was paid by J. C. Dunkle and no claim was made for refund, it must be concluded to have been another voluntary contribution on his part, and inasmuch as the residuary estate is not depleted thereby, it may not be said to be a double assessment of tax upon the residuary legatee. These legacies and the residuary estate vested on the death of the decedent's husband are payable "as they become of legal age (or are so)." Three legacies are reported paid, two not paid. When the three legacies reported paid became payable is not in evidence before us. The two legacies of $25 each to George Harshaw and Grace Harshaw, respectively, and the residue properly remaining in the estate to be paid to Catherine Harshaw are not yet paid. Under all the circumstances attending this case, we think interest, if any, accrued upon transfer taxes unpaid upon any of the legacies may properly be remitted.

### Order.

And now, to wit, October 18, 1930, for the reasons set out in the foregoing opinion, upon due consideration, the exception of the register of wills to the report of the auditor in the estate of Catherine Dunkle, deceased, is sustained, and it is ordered that the said report be remitted to the auditor to be made to conform to the opinion above.

From Merritt H. Davis, Clarion, Pa.