## Kunkle's Estate

*John W. Hoke,* for exceptant; *Edmund C. Wingerd,* contra.

DAVIDSON, P. J., December 1, 1934.—During her lifetime the decedent, Margaret Kunkle, had conveyed to her son, John F. Kunkle, the appellant, three tracts of land in St. Thomas Township, this county: one, containing about 104 acres, by deed dated June 8, 1928, and recorded June 9, 1928, and the other two by deed dated the same day and recorded the next day. On the same date said John F. Kunkle, the grantee in said deeds, executed a mortgage to said Margaret Kunkle for $10,000, conditioned upon his carrying out the agreement to maintain his said mother during the remainder of her life, and, in addition to pay to her $400 a year in cash so long as she lived, this mortgage covering all three tracts of land conveyed by said mother to said son as above set forth. After the death of Margaret Kunkle, John F. Kunkle, as executor of her will, satisfied said mortgage, its terms having been complied with.

On May 6, 1932, an appraisement for transfer tax purposes was filed in said

estate in the office of the Register of Wills of Franklin County, in which the said mortgage was appraised in the sum of $10,000. From this appraisement the said John F. Kunkle took an appeal to this court and on January 24, 1933, an opinion was filed by the court sustaining the appeal, setting aside the appraisement and directing that it be stricken from the records, and setting aside and cancelling the tax assessment made by virtue thereof.

The matter so rested, no appeal having been taken from this decree, until March 27, 1933, when a second appraisement, marked a "supplemental appraisement" was filed in said estate, in and by which the said three tracts of land, as described in said deeds above referred to, were appraised for transfer inheritance tax purposes in said estate, in the sum of $8600. From this appraisement, too, said John F. Kunkle has taken his appeal to this court, and it is on this appeal we are now passing.

This appeal raises two questions for the decision of the court:

1. Has the Commonwealth a right to make a second appraisement in the estate of the decedent, where the appraiser, with full knowledge of the facts and without any fraud or concealment from him, appraised a mortgage on certain real estate in the original appraisement, which appraisement the court on appeal set aside and directed to be stricken from the records, where the appraiser now in the present appraisement appraised for inheritance tax purposes real estate conveyed by the decedent to her son during her lifetime and covered by said mortgage?

2. If such second appraisement is upheld, is the real estate so appraised subject to transfer inheritance tax?

In the first place, while the present appraisement is marked a "supplemental appraisement", it is not properly so designated. The original appraisement having been completely wiped off the books and canceled, was therefore no longer in existence, and, hence, this appraisement can not be a supplemental appraisement, as there is nothing for it to supplement. It must, therefore, be held to be a second appraisement in this estate. The name is not so essential, for if the Commonwealth had no right to make a second appraisement in this estate under the circumstances, it had no right to make a supplemental appraisement.

We come then to a consideration of the first question propounded in this appeal, and as we feel constrained to sustain this appeal for the reason set forth therein and hold that there is no power in the Commonwealth to make this second appraisement, we can dismiss the second question without discussion as it had no standing, with the first question so decided.

It is not contended on the part of the Commonwealth that the appraiser did not have full knowledge, when he made the original appraisement, of all the facts in the case just as fully as he had them when the second appraisement was made, the counsel for the Commonwealth saying in his brief: "The appraiser in the present case undoubtedly knew, or should have known, the facts as they existed, and the appraiser also unquestionably appraised the mortgage with this knowledge in mind, deciding that the mortgage was the proper thing to appraise." Neither is it contended that there was any fraud to induce this appraisement. We have, therefore, an appraisement made with full knowledge of the estate without any fraud or concealment and, when that appraisement is set aside by the court, an attempt to file a second appraisement to correct a mistake of the appraiser. This can not be done.

In Moneypenny's Estate, 181 Pa. 309, 312, the Supreme Court said:

"The decedent died in 1884, and in the same year an appraiser was appointed

and the collateral inheritance tax on personal property assessed and paid. Nearly twelve years afterwards a new appraiser was appointed by the register of wills, and made an appraisement of the proceeds of real estate in the city of New York which had been sold by the executors under the directions of the will, upon the expiration of certain life estates. The ground of this second appraisement was that the New York land had been converted into personalty by the testator's direction to sell and that the first appraiser had omitted it. The fact of such omission was conceded. The auditor found expressly that the omission was not induced by any fraud or concealment, and the undisputed evidence shows that it was not the result of accident or of mistake in any proper legal sense but was done intentionally by the appraiser upon his view of the law. The error, if there was one, was due to the appraiser's erroneous judgment, deliberately reached upon knowledge of all the facts. The commonwealth seeks, and the court has sustained, a second appraisement to revise this judgment of the appraiser. Clearly this cannot be done. The plain statutory remedy for such a case is not a second appraisement, but an appeal from the first. It does not admit of doubt that if the commonwealth had appealed, the court would have reviewed the appraiser's action and corrected any error. This fact alone is conclusive that an appeal was the proper and exclusive remedy. How strictly parties in such case are confined to the statutory procedure is shown by Com. v. Coleman, 52 Pa. 468, where the appeal was taken in time but by the administrator instead of the devisee, and the court below having reduced the assessment, the judgment was reversed, this court saying, 'the effect of this will be to confirm a valuation which we fear was excessive and which, if we could enter into the question we would be likely to reduce somewhat if not as much as the court below. But as the record is, our judgment must be a reversal.' "

It was conceded by counsel for the Commonwealth at the argument that unless Moneypenny's Estate, supra, can be distinguished it rules the instant case, but he urged on us very strongly that that case does not decide that the Commonwealth has any right of appeal from the decision of the lower court, and, if it is held that there is no such appeal, then this decision of the Supreme Court comes to naught and is not good law. We can not agree with this contention. We feel that the right of appeal is fully recognized in Moneypenny's Estate, supra, where it is said: "The plain statutory remedy for such a case is not a second appraisement, but an appeal from the first. It does not admit of doubt that if the commonwealth had appealed, the court would have reviewed the appraiser's action and corrected any error. This fact alone is conclusive that an appeal was the proper and exclusive remedy." With this statement of the Supreme Court before us we can not hold that there is no right of appeal in the Commonwealth.

In addition to this, the right of appeal, founded on Moneypenny's Estate, supra, has been recognized in a number of lower court cases. See Allison's Estate, 18 Dist. R. 438; Wasser's Estate, 19 Dist. R. 140; Winsor's Estate, 11 D. & C. 423; Hyde's Estate, 1 D. & C. 670.

But we are of the opinion that even if it be conceded that there is no right of appeal on the part of the Commonwealth, Moneypenny's Estate, supra, yet held that no second appraisement may be made in cases such as this. In that case it was said, p. 313:

"But there is another reason why this proceeding cannot be sustained. The statutes do not contemplate or provide for more than one appraisement. On the contrary the intent is that the first shall be complete and final. By the Act of

April 10, 1849, sec. 12, P.L. 571, in force in 1884, 'in order to fix the valuation of the real estate of persons whose estates are subject to the payment of a collateral inheritance tax' the appraiser is required not only to 'put a fair valuation upon said real estate,' and 'make a fair and conscionable appraisement of the personal estate of the decedent' but also 'to fix the then cash value of all annuities and life estates growing out of said estate, upon which annuities and life estates the collateral inheritance tax shall be immediately payable out of the estate at the rate of said valuation.' By the next section, where any life estate is left to a person not taxable 'and the remainder over to collateral heirs at their decease, immediately after the death of the testator, the estate so granted shall be appraised . . . . . . . . and the collateral inheritance tax on the remainder shall be immediately due and payable.' It will thus be seen that nothing was allowed to escape or even to be postponed. Real estate whether in possession or in remainder, in fee or for life, annuities and personal property, everything taxable at all was to be included in the appraisement, which thus was not only to be exhaustive but necessarily final. The commonwealth did not intend to wait and take its tax in instalments as the annuities and profits of life estates accrued to their owners, or estates in remainder came into possession, but required everything to be appraised at the standard of its present cash value, and then exacted payment of the whole tax at once. The hardship of this law upon remaindermen was so manifest that by the Act of March 11, 1850, sec. 1, P.L. 150, an exception was made in their favor, by which it was declared lawful for them 'to elect to wait their coming into the actual possession,' and to defer payment upon giving security for the tax with interest from the time it accrued until paid. Even by this act however nothing was postponed but the date of compulsory payment. The tax was still left due upon the testator's death, was still to be included in the appraisement and was to bear interest until paid."

This to our mind governs us in this case. There is no material difference between the Act of June 20, 1919, P. L. 521, the one now in force, and the Act of April 10, 1849, P. L. 570, referred to in Moneypennys' Estate, in the essentials referred to in that opinion, and, hence, we are bound by it. The Act of 1919 provides in section 10 as follows: "Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life-estates growing out of said estates, upon which annuities and life-estates the tax imposed by this act shall be immediately payable out of the estate at the rate of such valuation." And in section 3 it provides: "Where there is a transfer of property by a devise, descent, bequest, gift, or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estates shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years."

From this it is seen that the law when Moneypenny's Estate was decided and the law when Margaret Kunkle died is practically the same and the decision in that estate applies to the instant case and we are bound by it.

In addition to this it is stated in Rowell's Estate, 315 Pa. 181, 183: "If this is a final appraisement, as it appears to have been intended to be, it ends the present controversy, for a second appraisement is without authority in law: Moneypenny's Est., 181 Pa. 309."

We can not do otherwise under the law as we find it but to sustain the appeal filed to the present or second appraisement.

654

Now, December 1, 1934. The appeal filed to this appraisement for transfer inheritance tax purposes is hereby sustained and said appraisement is set aside and directed to be stricken from the records, and the assessment by virtue thereof is set aside and cancelled.