# Frick's Estate.

*Executors and administrators—Distribution — Decree — Act of June 7, 1917, P. L. 447—Failure of creditors to present claims.*

1. Under section 49 (b) and 50 (a) and (b) of the Fiduciaries Act of June 7, 1917, P. L. 447, where, under a decree of court, ex-

ecutors or administrators distribute a fund held by them, they cannot be held liable to other creditors who did not present their claims, nor, under such circumstances, can the distributees be required to refund the sums received.

*Taxation—Inheritance tax—Act of June 20, 1919, P. L. 521—Constitutional law—Deductions—Clear value of estate.*

2. The Inheritance Tax Act of June 20, 1919, P. L. 521, is a tax upon the clear value of the estate, and not upon specific gifts when and as received by the distributees.

3. Section 2 of the act is not unconstitutional because it declares that no reduction shall be allowed for or on account of taxes paid on such estates to the Government of the United States, or to any other state or territory.

*Courts—Opinions—Construction of act—Control of judgment in subsequent suit.*

4. General expressions in an opinion are to be taken in connection with the case in which they appear. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision.

5. Isolated expressions in a prior opinion of the court, when considering another part of an act, cannot be permitted to override the express language of the statute.

*Constitutional law—14th Amendment—Constitution of United States, cl. 1, section 8, article I—Taxation—Inheritance tax—Act of June 20, 1919, P. L. 521—Uniformity—Equity—Double taxation —Property outside of State—Conflict of laws—Time—Interest—Trusts and trustees—Tax exemption.*

6. The Inheritance Tax Act of June 20, 1919, P. L. 521, does not infringe upon clause 1, of section 8, of article I, of the Constitution of the United States, nor upon clause 2, of article VI, thereof, nor upon the 14th Amendment to it.

7. The right to dispose of one's property by will, and the right to have it disposed of by the law, after decease, is created by statute, and therefore the state may impose equal and uniform conditions upon the exercise of the right.

8. The 14th Amendment of the Constitution of the United States, does not diminish the taxing power of a state, but only requires that in its exercise the citizen must be afforded an opportunity to be heard on all questions of liability, and must not, by arbitrary and discriminatory provisions, be denied the equal protection of the laws.

9. It is only where a state tax law proposes or clearly results in such flagrant and palpable inequality between the burden imposed and benefit received as to amount to an arbitrary taking of property without compensation, that it will be held to violate the Constitution of the United States.

10. When all the members of a class are taxed alike, the requirements of equality and uniformity are satisfied.

11. Where a state has jurisdiction over a fund to be distributed, and also over the parties claiming an interest in the fund, it may lawfully charge and deduct from the fund, before distribution, any sum of money due by the estate because of its inheritance tax laws.

12. That double taxation may result from a particular construction of a statute is a matter of little moment if every one else in like situation will be doubly taxed.

13. A decedent cannot by his will alter the amount of inheritance tax to which the Commonwealth is entitled, save to the extent and in the way the statute itself allows.

14. The legality of a tax is not to be measured by the benefit received by the taxpayer; protection and taxation are not necessarily correlative terms, and hence the taxing power cannot be interfered with except when there has been such flagrant abuse as practically to amount to confiscation.

15. A state cannot tax tangible property located in another state but it may levy an inheritance tax upon its own citizens or the property within its own borders, measured partly by the value of the tangible property in other states.

16. Where the law of a domiciliary state is needed to determine the rights of those who claim property left by a decedent, it may require them, if presenting their claims at the place of domicil, as a condition precedent to distribution, to pay an inheritance tax measured partly by the value of property located in other states.

17. An inheritance tax statute may provide that the tax shall be payable at a given time, and in default of its payment at that time that interest shall run upon the amount due, even if the distributees could not then obtain their share of the estate.

18. It is only when no provision is made for the time when interest shall begin to run, that it is fixed as of the date the principal is due and payable.

19. Under the Inheritance Tax Act of June 20, 1919, P. L. 251, the tax must be paid within one year from the death of the decedent, and interest begins to run from that time.

20. The Act of July 9, 1919, P. L. 794, does not relieve a municipality, corporation or unincorporated body from paying the

inheritance tax on a sum of money bequeathed in trust for the sole use of the public; the exempting provision of the statute only applies to estates in buildings, ground, books, curios, pictures, statuary or other works of art.

21. Provisions exempting property from taxation must be strictly construed.

22. The expression of particular things in an exempting statute, excludes all other subjects alleged to be exempt.

Mr. Justice FRAZER filed a dissenting opinion.

Argued January 12, 1923. Appeals, Nos. 39 and 40, by the Commonwealth, and Nos. 42 and 44, by Helen C. Frick, a residuary legatee, and Nos. 43 and 45, by executors of Henry C. Frick, from decrees of O. C. Allegheny Co., Dec. T., 1920, No. 476, and March T., 1922, No. 171, dismissing exceptions to adjudication in estate of Henry C. Frick, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed in so far as relates to refusal to allow the inheritance tax on $2,000,000 legacy to maintain a public park in the City of Pittsburgh, and affirmed in all other respects.

Exceptions to adjudication of MITCHELL, J., of amount of inheritance tax due Commonwealth.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. The Commonwealth, the executors of Henry C. Frick, deceased, and Helen C. Frick, a residuary legatee, appealed respectively.

*Errors assigned,* inter alia, were decrees dismissing exceptions, quoting record.

*George Wharton Pepper* and *George B. Gordon,* with them *Miles H. England, John G. Buchanan, S. G. Nolin* and *Frank B. Ingersoll,* for appellants.—The Act of 1919, is a tax law, not an escheat or decedent's estate law. If it were either, it would be unconstitutional.

This tax is not an estate tax; it is a succession tax, a tax on what the beneficiary receives: Knowlton v. Moore, 178 U. S. 41; Kirkpatrick's Est., 275 Pa. 271.

The legislature had no power to tax the transfer of tangible articles of personal property situated beyond its boundaries: Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194; Tappan v. Bank, 86 U. S. 490; Amherst College v. Ritch, 151 N. Y. 282; Colorado v. Harbeck, 232 N. Y. 71; Eidman v. Martinez, 184 U. S. 578; Com. v. Standard Oil Co., 101 Pa. 119; Com. v. R. R., 145 Pa. 96; Dupuy v. Johns, 261 Pa. 45; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395; Com. v. Dredging Co., 122 Pa. 386; Hostetter's Est., 267 Pa. 193.

The statute does not authorize the imposing of a tax on the residuary legatees upon what they do not receive, i. e., (a) the taxes paid to the State of Pennsylvania upon general and specific legacies and devises; (b) the taxes paid to other states upon devises of real estate; (c) the taxes paid to other states upon transfers of corporate stocks; (d) the estate taxes paid to the United States: Com. ex rel. v. Butler, 99 Pa. 535; Com. v. Penna., etc., Co., 271 Pa. 456; Gould v. Gould, 245 U. S. 151.

To tax the residuary legatees upon the amount of property (money) expropriated (a) by the United States as an estate tax; (b) by other states as an estate or succession tax on real estate located in those states; (c) by other states as a transfer, estate or inheritance tax on shares of capital stock of corporations incorporated under the laws of those states; (d) upon the amount of transfer succession taxes paid to the State of Pennsylvania on the general and specific bequests and devises, contravenes the Constitution of the United States and the Constitution of Pennsylvania: Knight's Est., 261 Pa. 537.

*George E. Alter*, Attorney General, and *David A. Reed,* with them *George Ross Hull,* Deputy Attorney General, for Commonwealth.—The transfer of tangible

personalty situated in other states is taxable in Pennsylvania: Bullen v. Wisconsin, 240 U. S. 625; Union Refrigerator Transit Co. v. Kentucky, 199. U. S. 194; Com. v. Oil Co., 101 Pa. 119; International Paper Co. v. Massachusetts, 246 U. S. 145; Attorney General v. Stone, 209 Mass. 186; Knowlton v. Moore, 178 U. S. 41; Clymer v. Com., 52 Pa. 185; Strode v. Com., 52 Pa. 181; Finnen's Est., 196 Pa. 72; Jackson v. Myers, 257 Pa. 104; United States v. Perkins, 163 U. S. 625; Magoun v. Bank, 170 U. S. 283; Plumber v. Coler, 178 U. S. 115; New York Trust Co. v. Disner, 256 U. S. 345; Kirkpatrick's Est., 275 Pa 271; Hood's Est., 21 Pa. 106; DeWitt's Est., 266 Pa. 548; Marr's Est., 240 Pa. 38; Miller v. Com., 111 Pa. 321; Williamson's Est., 153 Pa. 508; Vanuxem's Est., 212 Pa. 315; Short's Est., 16 Pa. 63; Milliken's Est., 206 Pa. 149; Bullen v. Wisconsin, 240 N. S. 625; Coe v. Errol, 116 U. S. 517.

Neither United States, foreign states, nor Pennsylvania inheritance taxes should be deducted prior to computation of the Pennsylvania tax: Knight's Est., 261 Pa. 537; New York Trust Co. v. Disner, 256 U. S. 345.

The so-called park fund legacy is taxable at five per cent: Wagner Free Institute v. Phila., 132 Pa. 612; Phila. v. Barbour, 160 Pa. 123.

OPINION BY MR. JUSTICE SIMPSON, April 30, 1923:

We are asked by these six appeals to review the action of the court below in determining the amount of inheritance tax due by the estate of Henry C. Frick, deceased, to this Commonwealth, of which he was a resident, and in which he was domiciled when he died on December 21, 1919. A number of points are raised; some concern the interpretation of the Constitution of the United States or of this State; others the construction of our Inheritance Tax Act of June 20, 1919, P. L. 521; and still others the meaning of testator's will. The argument took a wide range, possibly because of a belief regarding the importance of the questions raised, due partly to the

large amounts involved; and perhaps also because of a conviction, which the writer shares, that the State should have, as part of its public policy, a refusal to tax any gift for a "purely public charity," since no valid reason can be given for taxing the public for the benefit of the public. Whatever appellant's reasons may be, however, we are compelled to follow along the lines of the able arguments presented, though this results in what would ordinarily be considered an unnecessarily long opinion.

By testator's will (so far as it need be considered here), he gave to certain trustees "all the books, pictures, paintings, ...... antique or artistic furniture" contained in his dwelling house in New York City, to be held by them until a corporation, to be known as "The Frick Collection," should be formed, under the laws of the State of New York, when these articles should be transferred to it; he gave the rest of his personal property in this dwelling house, and also in his residence at Pride's Crossing, Massachusetts, to his wife "excepting, however, from this bequest, all articles of personal property" given to the trustees and corporation above stated; he gave to the City of Pittsburgh a tract of 151 acres of land "as a public park," and to the Union Trust Company of that city, the sum of $2,000,000, the income therefrom to be used in "maintaining, improving, embellishing and adding to the said park, and keeping the same in proper condition"; and he directed "that all inheritance, legacy, succession or similar duties or taxes, which shall become payable in respect to any property or interest passing under my will......shall be paid out of the capital of my residuary estate," which, as found by the court below, amounted to $24,704,126.55.

After the probate of the will, the executors paid to the United States the sum of $6,338,898.68, being the federal estate tax upon the property left by decedent; to various states and the Province of Quebec, the sum of $1,-084,459.42, being the inheritance taxes chargeable under

their laws; to the State of New York the sum of $131,-000; and to this Commonwealth the sum of $1,978,949.71, the inheritance tax which the estate admitted to be due. The governments specified do not concede the first three of these payments to be sufficient in amount; whether or not the last one is, is the question to be decided in this opinion.

By proper proceedings before the register of wills of Allegheny County, the amount of the tax due this State was found to be largely in excess of the sum already paid, whereupon the executors and one of the residuary legatees appealed to the orphans' court of that county, which determined a smaller amount was due, and later, on an adjudication of the executors' account, awarded to the Commonwealth the additional sum of $1,188,248.16. It was reached by assessing the proper percentages on the total value of the real estate in Pennsylvania, and of the personalty wherever found (the valuations being agreed upon), the $5,156,625 worth of realty located elsewhere not being considered or included.

From these two decrees the present appeals were taken; two of them by the Commonwealth, alleging additional taxes should have been assessed, and the other four by the executors and a residuary legatee, averring that too much was awarded. No claim was made upon the fund except by the State and the legatees; no creditor asked that distribution be delayed or a fund set apart to await a future adjudication of his claim; and no refunding bonds were required of the distributees, to whom the balance in the account was awarded. Hence, even if there are unpaid creditors, who hereafter present and prove their claims, they cannot, under our statutes, successfully maintain suits against the distributees or the executors, to obtain a refund of the sums paid by the latter to the former, on the faith of the court's decree, but can only have recovery against assets not appearing in the present account: Sections 49 (b) and 50 (a) and

(b), Fiduciaries Act of June 7, 1917, P. L. 447, 515, 516-17.

The basic claim of the executors and residuary legatee being that the award is excessive, by reason of the fact that the court below improperly included, in the total valuation of the estate, certain of the assets left by testator, and mistakenly refused to allow certain credits against that valuation, in the natural order of consideration our first inquiry is: What does the Act of June 20, 1919, P. L. 521, under which the proceedings were had, provide regarding the tax and how it is to be calculated? Section 2 thereof states, inter alia, that, "In ascertaining the clear value of such [decedents'] estates, the only deductions to be allowed from the gross value of such estates shall be the debts of the decedent and the expenses of the administration of such estates, and no deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States or to any other state or territory." And section 10 says: "The register of wills of the county, in which letters testamentary or of administration were granted upon the estate of any person dying seized or possessed of property while a resident of the Commonwealth, shall appoint an appraiser, whenever occasion may require, to appraise the value of the property or estate of which such decedent died seized or possessed."

It is clear from these sections that the tax is to be levied upon "the clear value" of the entire estate (from which has been excluded, however, real estate located outside of Pennsylvania), after deducting only "the debts of the decedent and the expenses of the administration" of such estate. The appraisement to be made is not of the legacies or devises but of the whole estate of a decedent; the debts and expenses of administration are not to be deducted from any particular gift or gifts, but from the whole estate, and the taxes paid to the United States or to any other state or territory, if permitted to be deducted, would have been from the whole estate. We

therefore conclude that it is the entire value of the estate, less the credits specified, which forms the basis of the tax, and not the amounts received by the particular legatees; hence, as stated in Knowlton v. Moore, 178 U. S. 41, that which the State "taxes is not the interest to which some [or many a] person succeeds on a death, but the interest which ceased by reason of the death." Since this is the true construction of the act, much of the argument made by these appellants, founded as it is upon the contention that the tax is levied only upon the particular gifts, when and as received, becomes ineffective because it has no relation to the actual status.

Basing their elaborate argument largely on their erroneous construction of the act as last stated, the executors and residuary legatees who appeal, ask us to ignore the clear and unambiguous language of section 2, above quoted, and to decide that the court below erred "in ascertaining the clear value" of the estate, because it did not deduct from its "gross value" (a) the amount paid the Government for the federal estate tax; (b) the amounts paid other states and the Province of Quebec for their inheritance taxes on decedent's real and personal property there located; and (c) the inheritance tax payable to this State. Kirkpatrick's Est., 275 Pa. 271, is an express authority against the first of these claims; in principle it also decides the others adversely to these appellants. In deference to the able arguments made, however, the supposedly new points presented will be briefly considered, aside from that decision.

In support of their contention upon these points, they urge that refusal to allow these items to be deducted "adds the federal tax, the tax paid to the other states," and that paid to this State, to the total valuation to which the tax rate is applied; this is erroneous, however; it simply refuses to allow those sums to be deducted from the "gross value of such estates" "in ascertaining the clear value" thereof, exactly as does the Federal Estate Tax Act (New York Trust Co. v. Eisner, 256 U. S.

345, 349, 350), and many of the inheritance tax laws of other states. No valid reason is given why this may not be done. On the contrary, as stated in the last cited case, where "the tax attaches to the estate before distribution, —if it is a tax on the right to transmit, or on the transmission at its beginning,—obviously it attaches to the whole estate, except so far as the statute sets a limit."

Recognizing that their contention now being considered is in direct antagonism to the express language of the statute, these appellants in effect ask us to ignore this language, and from isolated phrases and words in the statute to reach an opposite conclusion, partially because of general expressions found in our opinions in Oliver's Est., 273 Pa. 400, and Kirkpatrick's Est., 275 Pa. 271,—though this question was not directly raised in either of them,—apparently forgetting the basic rule that "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated": Cohens v. Virginia, 6 Wheaton 264, 397, per MARSHALL, C. J.; O'Malley v. O'Malley, 272 Pa. 536. Of course we cannot permit isolated expressions in a statute, or in any opinion of ours, to override the express language of the act being construed.

It is further urged that there are constitutional objections to the provisions of the statute, if the deductions above referred to are not made. The only section of the Constitution of this State, which is supposed to affect the matter, is article IX, section 1, which provides that "all

taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax." This, however, is not infringed, since the estates of all decedents are subjected to a uniform inheritance tax in all parts of the Commonwealth; and hence we turn to the provisions of the federal Constitution, alleged to have been violated by the decree below, to see if they or any of them stand in the way of enforcing the statute as written.

The first claim regarding this is that it is "repugnant to clause 1, of section 8, of article I, of the Constitution of the United States, in that it interferes with the power of Congress to levy and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States." This is a veiled attack upon our dual form of government, and, in its ultimate analysis, would appear to be an attempt to deny to the states any right to exercise their taxing power upon subjects which the federal government may also tax. It needs no argument to show the error of such a contention. Moreover, there cannot be found anywhere within the four corners of the act, in the practice under it, or in the decree below, the slightest evidence of a desire to interfere with the taxing powers of the United States.

It is further said that if the taxes paid the government are not deducted our statute will be "repugnant ...... also to clause 2, of article VI, of the Constitution of the United States, in that it denies that the said Constitution and the laws of the United States made in pursuance thereof..... are the supreme law of the land, and that the judges in every state are bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." In this day probably no one would deny the supremacy claimed; this court never has. The principle contended for is wholly inapplicable, however. Given the fact, that a state may levy an inheritance tax on the value of the entire estate of a decedent,

even though part of it consists of United States bonds (Plumber v. Coler, 178 U. S. 115; Orr v. Gilman, 183 U. S. 278), it necessarily follows that, in determining the way in which this tax shall be computed, it may, subject to constitutional provisions, refuse to allow any deduction for taxes paid to the United States and other states. "The right to dispose of one's property by will, and the right to have it disposed of by the law, after decease, is created by statute, and therefore the State may impose such conditions upon the exercise of this right as it may determine" (Banker's Trust Co. v. Blodgett, decided by the Supreme Court of the United States, January 22, 1923, and not yet officially reported); hence the method of calculating the amount to be paid must necessarily be one for legislative consideration, for, as there stated, "The power of taxation, with its accessorial sanctions, is a power of government, and all property is subject to it." If the question of priority of right ever arises,—which American history since 1865 renders extremely doubtful, —the contention now made may become important; it does not arise here; in fact the federal estate tax has long since been paid, while Pennsylvania is still seeking to collect the amount due to her.

It is also contended that the refusal to make these deductions and the inclusion of the value of the tangible personalty, located elsewhere than in Pennsylvania (which will be further considered hereafter), made the decree below "repugnant......also to clause 1 of the 14th Amendment to the Constitution of the United States, in that it deprives the estate and the residuary legatees of property without due process of law, and also denies to them the equal protection of the laws." This contention is fully answered by what is said in Keeney v. New York, 222 U. S. 525, 535: "The 14th Amendment does not diminish the taxing power of the State, but only requires that, in its exercise, the citizen must be afforded an opportunity to be heard on all questions of liability and value, and shall not, by arbitrary and discriminatory

provisions, be denied equal protection. It does not deprive the State of the power to select the subjects of taxation......There can be no arbitrary or unreasonable discrimination"; but this can only arise (Dane v. Jackson, 256 U. S. 589, 599) where the state tax law "proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation,—'to spoliation under the guise of exerting the power of taxation,'" a situation not alleged to exist under our statute. If, however, we pass to separately consider the two branches of the Amendment, these appellants are not helped.

Upon the question of "due process of law," we have not been favored with a single specification regarding either the act, or the practice under it. The property being distributed in this proceeding is all in this State; appellants are our citizens and duly appeared and contested the claim of the Commonwealth; all the facts are agreed to; the law applicable thereto has been passed upon by the orphans' court, all of whose judges are learned in the law, is now under review by this court, and, judging from the record and the suggestion in the brief, will subsequently be scrutinized by the Supreme Court of the United States. Wherein then have these appellants been deprived of "due process of law"? We agree that "A tax can only be imposed by the State when it has either jurisdiction over a person or jurisdiction over his property"; here it has jurisdiction over both, decedent having been and appellants being domiciled in the State, the latter appearing to the action, all the property now in course of distribution being within the State, and a valid state statute lawfully imposing the tax. Under such circumstances, it is only when the State does not "provide a fair opportunity for submitting the issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts,"

that the conclusion reached "is void because in conflict with the due process clause": Ohio Valley Water Company v. Ben Avon Borough, 253 U. S. 287, 289.

Nor is there any definite allegation as to how the estate is deprived of the equal protection of the laws, though this is asserted over and over again, not only in regard to the refusal to allow the deduction of the items specified, but also, as above stated, in regard to the inclusion of the value of the tangible personal property located outside of Pennsylvania. If the estate has been deprived of the "equal protection of the laws," since all the facts are agreed to, it should be easy to point out exactly how this is so. What has Pennsylvania done which operates to "deny to any person within its jurisdiction the equal protection of the laws"? These executors and residuary legatees are accorded exactly the same protection given by this statute to every other person within its jurisdiction. Since then "the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied......[because] the law operates 'equally and uniformly upon all persons in similar circumstances'": Billings v. Illinois, 188 U. S. 97, 103. It would be of no moment, even if it is the fact, that double taxation may result, so far as regards the tangible personalty located in New York and Massachusetts (Blackstone v. Miller, 188 U. S. 189; Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54), for, if this is the case, every one else in like situation will be doubly taxed.

Two of the contentions made by these appellants are entitled to some further consideration. It is clear that neither testator nor any other decedent can, by his will, alter the amount which the Commonwealth is entitled to receive, save to the extent the statute itself specifies, that is, where the gifts are to a "father, mother, husband, wife, children, lineal descendants born in lawful wedlock, legally adopted children, children of a former husband or wife, or the wife or widow of the son of a person

dying seized or possessed thereof......or from the mother of an illegitimate child, or from any person of whom the mother is a lineal descendant to such child, his wife, or widow [or] passing from an illegitimate child to his mother" (these being commonly called direct inheritances) ; but two per centum is to be charged upon the value thereof, and where the gifts are to collaterals,— which include all distributees except those above specified,—five per centum is to be charged upon the value thereof. It necessarily follows that the direction of the present will "that all inheritance......taxes...... shall be paid out of the capital of my residuary estate," can have no effect in reducing the amount of tax to be paid to this State, but only operates, as between the two classes of gifts, to fix the ultimate payment upon the residuary devisees and legatees, in relief of the others, each of whom, but for that clause, would suffer an abatement of his or her devise or bequest, to the extent of the tax imposed upon its value. If this was not so, and a testator was permitted to reduce the amount payable to the State, by simply charging upon the residuary estate all the taxes paid elsewhere, the sovereign power of the State to impose them as it pleases, subject only to the requirement of equality and uniformity, would be made subject also, in this class of cases, to the unrestrained directions of a testator. Under such circumstances, a decedent who had a relatively large amount of property elsewhere, might, by the device stated, greatly embarrass and perhaps largely or wholly defeat the claim of the domiciliary State, even upon the value of the property within her own borders.

The inequity of this contention is particularly apparent as to the tax of other states on the realty located therein, the value of which is not considered in determining the amount of our inheritance tax. We fully agree with the contention of these appellants that it would be "quite preposterous to say that the State of Pennsylvania

has any jurisdiction to impose a tax upon the tax which
is paid to the foreign state upon the transfer of foreign
real estate." In the absence of a statutory provision so
authorizing, however, it would be at least equally pre-
posterous to say that a legatee can have deducted from
the actual value of the property in our State, which he
inherits, the amount he or some one else pays some other
state, upon the realty there situated, and pay our tax
only on the difference; and this, and not the imaginary
levying of "a tax upon the tax which is paid to the for-
eign state," is the actual situation.

As to the inheritance tax paid to this State, we may
further say that the act discloses no trace of a purpose to
permit the deduction of the tax itself, in order to deter-
mine the valuation upon which the tax is to be levied.
On the contrary, section 16 expressly provides that be-
fore paying any legacy the "executor or administrator,
or other trustee......shall deduct [the tax] therefrom
at the rate of two per centum upon the whole legacy [if
the inheritance is direct]......and at the rate of five
per centum upon the whole legacy," if the inheritance is
collateral. Hence it is palpably erroneous to say that the
percentage to be levied on the "clear value of such es-
tate," as calculated in the manner provided by the stat-
ute, should not be levied thereon, but on a sum which is
that "clear value" less the tax itself; that is, in the case
of direct inheritances on 98 per cent of that value, and in
the case of collaterals on 95 per cent of it. Doubtless the
legislature could thus provide, but it has not, and, so far
as we are aware, no other legislature ever has pursued
that course.

The next contention is that the tangible personal prop-
erty given to the widow, and also that which was to be-
come part of "The Frick Collection," is not subject to
this tax, because situated in other states than Pennsyl-
vania. Everyone concedes those assets cannot be taxed
by this Commonwealth; they are incorporated into the

great body of property of other states, and, by reason thereof, are necessarily subject only to their tax laws and other statutes: St. Louis v. Wiggins Ferry Company, 11 Wall 423; Leisy v. Hardin, 135 U. S. 100; Pittsburgh, etc., Coal Co. v. Bates, 156 U. S. 577. It is sometimes stated in general terms that the reason for this is that the right to tax is based on the protection accorded (Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 202; Tappan v. Merchants' National Bank, 86 U. S. 490, 501; Shaffer v. Howard, 250 Fed. 873, cited by these appellants) and hence, as the state of the situs is the only one which can give protection to the tangible property there located, it is argued that no other state can tax it, either directly or indirectly. This contention, founded as it is on general expressions only, is, as usually happens in such cases, plainly fallacious. Even the cases cited do not sustain the conclusion sought to be deduced from them. In Union Refrigerator Transit Company v. Kentucky, supra, which is much relied on by these appellants, the court is careful to say that it is only where "the taxing power is in no position to render these services or otherwise to benefit the person or property taxed" that the tax is objectionable. The other authorities are to the same effect. Surely the state-given right of transmission, by which these appellants seek a present award of $24,704,126.55, may be said "otherwise to benefit" them.

Moreover, it is said in Southern Pacific Co. v. Kentucky, 222 U. S. 63, 76, that "The legality of a tax is not to be measured by the benefit received by the taxpayer, although equality of burdens be the general standard sought to be attained. Protection and taxation are not necessarily correlative obligations, nor precise equality of burden obtainable, however desirable. The taxing power is one which may be interfered with upon grounds of unjustness only when there has been such flagrant abuse as may be remedied by some affirmative principle

of constitutional law." So far as we are aware, no well considered opinion, certainly none of the cases cited by these appellants, in any way controverts these principles.

Besides, a multitude of authorities state, and these appellants concede, that this is not a tax on the tangible personalty in New York and Massachusetts, but only on the right of transmission given by the laws of this State, where testator and these distributees alike were and are domiciled. This class of taxes, Union Refrigerator Transit Co. v. Kentucky, supra, [page 211], says, "are controlled by different considerations." It follows that as the right of transmission is state-created, and hence the Commonwealth can legally say, and does say, upon what terms this testator may give and his legatees may receive property within her jurisdiction, she may, for the reasons already specified, declare that the only basis upon which her conditions can be met, shall be by payment of a tax upon the value of decedent's property wherever located. When this right of transmission, coupled with the terms and conditions mentioned, fastens upon property, or becomes the medium by which its ownership or devolution is asserted, those who claim under the statute must do so cum onere, that is, must pay a tax, measured in the way stated; and this it has been clearly held the Commonwealth has a right to require.

This conclusion is foreshadowed, but not expressly decided, in Keeney v. New York, 222 U. S. 525, 539, where the property was in New Jersey at the time the inheritance tax was collectible and the property received by the distributees. In Maxwell v. Bugbee, 250 U. S. 525, however, the question was squarely raised, and it is said at page 539: "It is next contended that the effect of including the property beyond the jurisdiction of the state in measuring the tax amounts to a deprivation of property without due process of law because it in effect taxes property beyond the jurisdiction of the state. It

is not to be disputed that, consistently with the federal Constitution, a state may not tax property beyond its territorial jurisdiction, but the subject-matter here regulated is a privilege to succeed to property which is within the jurisdiction of the state. When the state levies taxes within its authority, property not in itself taxable by the state may be used as a measure of the tax imposed. This principle has been frequently declared by decisions of this court."

There are, moreover, other insurmountable obstacles in the path of these appellants. If it was necessary to obtain the express or implied consent of New York and Massachusetts, before this Commonwealth would be allowed to include, in the total valuation of the estate, the value of this foreign-located tangible personalty (which, of course, it is not), it would not be difficult to show that both were given; the former by the statutes of those states, hereinafter quoted, and the latter in the undisturbed comity existing between the states.

It is said in Bullen v. Wisconsin, 240 U. S. 625: "As the states where the property is situated, if governed by the common law, generally recognize the law of the domicil as determining the succession, it may be said that, in a practical sense at least, the law of the domicil is needed to establish the inheritance. Therefore, the inheritance may be taxed at the place of domicil, whatever the limitations of power over the specific chattels may be." To some degree, of course, the rule of comity may be modified by the laws of the state where such personalty is located (see cases cited in New Orleans v. Stempel, 175 U. S. 309, 313) ; but there is nothing appearing in the legislation of either New York or Massachusetts denying or qualifying the right claimed by this Commonwealth. True, there are provisions in their laws which differ from ours; notably those exempting charities from even this species of taxation, and limiting the proportion of the estate which a testator may give to charity. These re-

late, however, only to wills of testators there domiciled; the applicable statutory provisions regarding estates of nonresident decedents (showing also, if this is needed, the express consent of those states to the proceedings here), being as follows:

New York: "The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated, which would descend to the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death."

Massachusetts: Chapter 199, section 1: "If administration is taken in this Commonwealth on the estate of a person who was an inhabitant of any other state or country, his estate found here shall, after payment of his debts, be disposed of according to his last will, if any; otherwise his real property shall descend according to the laws of the state or country of which he was an inhabitant."

Chapter 65, section 5: "Property of a nonresident decedent which is within the jurisdiction of the commonwealth at the time of his death, if subject to a tax of like character with that imposed by this chapter by the law of the state or country of his residence, shall be subject only to such part of the tax hereby imposed as may be in excess of the tax imposed by the laws of such other state or country, provided that a like exemption is made by the laws of such other state or country in favor of estates of residents of this commonwealth; but no such exemp-

tion shall be allowed until the tax provided for by the law of such other state or country shall be actually paid, guaranteed, or secured in accordance with the law."

We agree, therefore, with counsel for the Commonwealth, that under the circumstances stated "it is mere metaphysics to argue whether the transfer [of the tangible personalty under consideration] is effected by virtue of the law of the situs or the law of the domicil; the fact is that tangible personal property passes according to, and in the manner provided by, the law of the domicil." We are clear, also, that there is no legal objection to including the value of the tangible personal property located in New York and Massachusetts; and this conclusion would probably be inevitable also (even if there was no comity existing between those states and ours, and no statutes of theirs on the subject), because of the admitted facts that all of the assets presently being distributed, and now claimed by these appellants, are located in Pennsylvania, and the will of testator, through which their right is derived, requires the tax to be paid out of them. For the reasons stated, no claim to these assets can successfully be made, save upon compliance with our statute requiring the payment of an inheritance tax on the value of all the tangible property there located, as well as on the value of the real and personal property in this State.

The principles stated answer also the contention that the tax cannot be assessed at this time, nor any interest charged, because some disputed and contingent claims have not been paid, and hence, it is not yet known what amount should be deducted for them and for administration expenses in adjusting them. If, however, the Act of 1919 provides that this character of tax shall fall due at a given time after a decedent's death, it must then be paid; and if it fixes a date from which interest shall run, it will begin to run from that date. It is erroneous to assert that interest upon a liability never begins to run

until the principal is payable; this is so only when no provision is made on the subject: Morris v. Ellwood, 275 Pa. 319. Many notes, to be paid in the future, carry "interest from date"; and this may always be provided for by contracting parties, and by statute in cases within the State's power to levy and collect. It is only necessary, therefore, to see what the Act of 1919 says as to the time the tax shall become due and payable and from what date interest shall run, remembering always that the tax is on the estate in its entirety, and not on each devise and bequest, when and as payable, as these appellants erroneously contend.

It must be admitted the act might have made clearer the answer as to the time when the tax is due, but enough appears to show the legislative intention. Section 14, which relates to the property of resident decedents, provides that "Whenever any such tax shall have remained due and unpaid for one year the register may apply to the orphans' court, by bill or petition, to enforce the payment of the same." Section 29 says that "Whenever any tax imposed by this act upon the transfer of property of a nonresident decedent within this Commonwealth shall have remained due and unpaid for one year, the auditor general may apply to the Court of Common Pleas of Dauphin County, or of any county in which such property may be situated, by bill or petition, to enforce the payment of the same" or may sue to recover it in "any court of this Commonwealth or elsewhere." And section 38, which relates to both resident and nonresident decedents, provides that "If the tax is paid within three months after the death of the decedent, a discount of five per cent will be allowed. If the tax is not paid at the end of one year from the death, interest shall be charged at the rate of twelve per centum per annum on such tax."

The last sentence above, fixes the fact that interest begins to run at the end of the year; and all of the provisions quoted, when considered together, may fairly be

construed to mean that the tax is due and payable not later than the end of the year, which time had expired before the award appealed from was made. The court below did not err, therefore, in directing the payment of the tax on the instant distribution, the assets in which, as well as those not included in the present account, but nevertheless included in the tax valuation, belonging alike to these appellants, who are, by this distribution, awarded a large part of the estate. It may be well to add that sections 20 and 40 of the act provide an adequate remedy for recovering back any excess payment made to appear by reason of later developments in the estate.

By the Act of July 9, 1919, P. L. 794, it is provided as follows: "All estates in any building, ground, books, curios, pictures, statuary or other works of art, passing by will from a person seized or possessed thereof to any municipality, corporation or unincorporated body, for the sole use of the public by way of free exhibition within the State of Pennsylvania, whether in trust or otherwise, shall not be subject to any collateral inheritance tax for the use of the Commonwealth." No other statute grants exemption from inheritance taxes. By virtue of the provision quoted, the Commonwealth concedes that the value of the land given to the City of Pittsburgh for a public park should be deducted from the "clear value of the estate," in determining the amount upon which the tax should be assessed, but claims that the $2,000,000 bequeathed for the purpose of keeping the park in order, should not be deducted. The court below erroneously decided otherwise, stating as its reasons that the legacy was given "for the purpose of completing the gift of the land, to effectuate the purpose of the testator," and was no "more than will be reasonably required to maintain and embellish said land for park purposes."

It will be noticed, however, that the statute nowhere refers to money gifts, but expressly states what subjects

shall be exempted from the payment of the tax. It does not say "all estates......given for the sole use of the public," but that "all estates in any building, ground, books, curios, pictures, statuary or other works of art," given for such use, shall be exempted, and by no process of reasoning can a money gift be held to come within any of these classes. It follows, therefore, that the $2,000,000 should not have been deducted in fixing the amount upon which the tax was levied; not only because provisions exempting property from taxation must be strictly construed (Bank of Commerce v. Tennessee, 104 U. S. 493; Com. v. Northern Electric L. & P. Co., 145 Pa. 105, 109), but also because the expression of the particular things which shall be exempted, excludes all other subjects: expressio unius est exclusio alterius.

Among other personalty owned by testator, located in his dwelling house in New York City, were a Louis XV tulip rosewood library table, which was appraised at $5,500, and a 16th century French walnut cabinet, appraised at $35,000. The Commonwealth claims that they are "antique.....furniture," within the meaning of those words in the foregoing quotation from testator's will, and hence were included in the gift to the trustees for the benefit of the Frick Collection, and upon their appraised value a tax of five per cent should be assessed, although that corporation refused to receive them because they were given by the will to the widow, who, under the decree below, pays a tax at the rate of two per cent only. The court below overruled this claim because of an agreement of all the parties interested, including the Commonwealth, that these and the other articles of furniture in testator's New York home were "nothing more than the ordinary furniture and furnishings suitable for such residence." Since that which is "nothing more than ordinary furniture" and "antique......furniture" are not or may not be the same, and there is no evidence compelling the conclusion that they are not, we cannot con-

vict the court of error in holding they are not "antique
.....furniture" within the meaning of the will. More-
over, the refusal of "The Frick Collection" to receive
them as "antique......furniture" necessarily resulted, if
they were such, in their falling into the residue, upon
which the tax imposed on their value would have been
at the rate of two per cent, exactly as it was charged
in the decree appealed from.

There is one other matter, not referred to in the assign-
ments of error, but to which our attention is specifically
called by a stipulation between the Commonwealth and
the parties interested under the will.  It appears that
testator had purchased what are known as the Fragonard
Panels, which were appraised at the value of $750,000,
and the Boucher Panels, which were appraised at the sum
of $150,000; and had "reconstructed the rooms, in which
his art collection was to be exhibited, so as to contain
said panels, and they were placed therein and are now
there, being applied to the walls of the rooms." Whether
or not the result of this was to make them a part of the
realty, under the laws of New York, we do not know,
except as we may infer the negative, since apparently
their value was included in fixing the amount upon
which the tax was assessed, and no assignment of error
objects to this.

The judgment of the court below is reversed, in so far
as relates to the legacy of $2,000,000, for the maintenance
of the park given to the City of Pittsburgh, and is af-
firmed as respects all the other questions raised on these
six appeals; the costs on all the appeals to be paid by the
estate.

DISSENTING OPINION BY MR. JUSTICE FRAZER:

A question is raised in this proceeding as to the right
of the State to tax that part of decedent's property paid
to the United States government in the form of an estate
tax.  There can be no doubt as to the meaning of the Act

of 1919. The legislature plainly intended, by section 2, to prevent the deduction of such tax before assessing the state transfer tax. The statute was passed to overcome the decisions of this court in Otto's Est., 257 Pa. 155, and Knight's Est., 261 Pa. 537, wherein we held that, in computing the net value of the estate, taxes due the federal government and foreign states should be deducted. The Act of 1919, on the point here involved, was construed by this court in Kirkpatrick's Est., 275 Pa. 271. The writer dissented from the conclusion reached in that case by the majority of the court, but filed no opinion setting out his reasons for such dissent. In view of the presentation of the same question in this proceeding, and of the further fact that this case will probably be taken before the Supreme Court of the United States, it seems proper that reasons for such dissent be briefly stated.

The power of the United States to tax is limited only by the extent of the necessity for raising money to meet the various needs of government. "That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied": McCullough v. Maryland, 17 U. S. 315, 429. The opinion in which this language was used firmly established the principle that a state is without power to tax an instrumentality of the federal government,—a principle which has been constantly followed and applied in the century elapsing since the decision there rendered. The general rule is, therefore, that states are without authority, by taxation or otherwise, to in any manner control or interfere with the operations of the federal government, or the instrumentalities by which that government is carried on. The latter is supreme within its sphere of action, and, where there is inconsistency or conflict, the state laws

and regulations must yield for the benefit of the whole. If the State of Pennsylvania is permitted to tax property appropriated by the federal government, under its taxing power, this, in effect, permits the State to collect revenue from property set aside for the use of the United States. If we concede the state tax is on the right to transmit the property and not on the property itself, still the total estate has been depleted by the amount of the federal tax and it is only the balance, thus remaining, decedent has a right to transfer and if the total estate is taken as the basis of the state tax, the effect is to give the State a revenue derived from a fund set aside for the benefit of the United States. The federal tax is an estate tax payable out of the estate of decedent and is imposed, regardless of the will of the decedent, on the gross estate, after deducting designated items: Knight's Est., supra. The right of the United States to first collect its tax seems to be conceded and if the right of the United States to tax includes the right to tax to any amount, or to take the whole where necessary, the result of holding that the federal tax should not be deducted before computing the state tax might be to impose a combined state and federal tax exceeding the value of the property. Let us suppose, for example, that the federal tax is sixty per cent of the estate and the state tax an equal amount. The result would be that the estate would owe in taxes twenty per cent more than its value, regardless of what that might be. While it may be argued that this situation would not be likely to arise, and indeed presents a very remote possibility, yet it shows the logical result of permitting two or more sovereign powers to levy a tax on the whole of a decedent's estate. The fact that the right of succession is a state right and not within the control of the federal government does not give to the State the power to take away from the federal government the subject-matter of the tax, as was suggested in the opinion of the majority of this court in Kirkpatrick's Est., supra, inasmuch as, under the federal law, the tax is on the estate

as a whole and not on the transfer to the beneficiary and the justification for the tax is the ending of the estate by death rather than the beginning of a new estate by succession: Knowlton v. Moore, 178 U. S. 41.

The majority opinion holds exempt the land given to the City of Pittsburgh as a public park but imposes a tax of five per cent on the fund of $2,000,000 given for the purpose of taking care of the property. It is conceded the sum so given is not in excess of the amount necessary to properly improve and maintain the park and that, in absence of such gift, the city would be obliged to tax its citizens to provide for such maintenance. It is true the Act of 1919 refers in its exemptions only to "estates in any buildings, ground, books, curios, pictures, statuary or other works of art," given for public purposes, and does not specifically mention funds left for maintenance of such objects. Any distinction between the gift of land for a park and the gift of a sum of money for its maintenance or for the purchase of property to be used as a park is but an arbitrary one and not based on a real difference in the purposes or objects of the gift. Granting the power of the legislature to make an arbitrary distinction if it sees fit to do so, the question is whether this has been done in the Act of 1919.

If the statute in question is to be construed strictly, then the majority opinion of the court is undoubtedly right. The argument for such strict construction, however, is based on prior decisions rendered in cases involving, not the question of exemption of public property, but exemption of private property held for charitable or other purposes, bringing it within the laws providing for exemption from taxation. There is a clear distinction in the law applicable to these two classes of cases. Public property is never subject to tax laws and no portion of it can be, without express statutory enactment. Accordingly, no exemption is needed for public property held as such: Poor Directors v. School Directors, 42 Pa. 21; Pittsburgh v. Sterrett Sub-District School, 204 Pa. 635,

641. Exemption is the rule and taxation the exception. In considering legislation of the character here in question it is always to be presumed that general language is used with reference to taxable subjects, and the property of municipalities does not fall within the ordinary designation of taxable subjects: County of Erie v. City of Erie, 113 Pa. 360. To levy a tax on such property would merely mean the assessment of new taxes to meet the liability which the city had imposed upon itself, and no benefit would accrue. On the contrary, an additional liability would result, measured by the expenses of imposing and collecting the tax. Hence, it is unreasonable to conclude that a law, however general, was intended to reach property held by the public for public purposes. While such property may be taxed if the legislature sees fit to so provide, the intention must be clearly expressed or necessarily implied. On the other hand, as to private property, even though held for private charities and therefore exempt as such, a different rule applies. In such case liability to taxation is the rule and the person claiming exemption must point to an express statute granting relief from the burden. An illustration of this is found in Robb v. Phila., 25 Pa. Superior Ct. 343, which followed the general principles established many years ago by this court. In the course of the opinion in the case just cited, it was said (page 346): "There is this distinction for the purpose of taxation between property owned by a church and that owned by a municipality and devoted exclusively to public purposes. The church must show ground on which its property is exempt. The public property of a municipality cannot be taxed unless there is the clearly manifest legislative intention that it shall be subject to the imposition. Property belonging to the State and its municipalities, and which is held for governmental purposes, is presumed to be exempt, and is not included in any designation of property to be taxed however sweeping, unless the statute authorizing the tax expressly provides." Citing

Pittsburgh v. Sterrett Sub-District School, supra, wherein appears an elaborate review of the authorities of our own and sister states.

It is also to be noted, as having an important bearing on this question, that the settled policy of the State is to exempt from taxation "institutions of purely public charities," and that they "may be exempt by necessary implication of law": Mattern v. Canevin, 213 Pa. 588, 589-90, construing article IX, section 1, Constitution of Pennsylvania.

Applying the foregoing principles to the present case, it seems a narrow construction of the act in question to exempt existing physical things devised for public purposes, such as buildings, ground, books, curios, works of art, etc., and to refuse to exempt a monetary gift made either for the purpose of purchasing such objects or maintaining those already in existence. The purpose and spirit of the law applies to the money equally with the objects enumerated. Bearing in mind the principles above stated, showing the policy of our law, it seems to the writer of this opinion that the Act of 1919 should be construed to include money left by will to maintain the charitable objects there exempt.

Entertaining these views on the questions briefly stated above, the writer enters his dissent from the opinion of the majority.