## Hogg's Estate.

*Taxation—Inheritance tax—Personal property in another state—Decedents' estates—Maxims—Act of June 20, 1919.*

1. The personal tangible assets of a Pennsylvania decedent located in another state and not within the jurisdiction of the Pennsylvania courts, but being distributed under a decree of a court of the other state, are not, under the Act of June 20, 1919, P. L. 521, subject to the Pennsylvania inheritance tax.

2. The maxim *mobilia personam sequuntur* is not a fixed law, but a legal fiction resorted to as a matter of convenience and to prevent injustice, and has no application in the settlement of a decedent's estate on a claim for the inheritance tax where the Pennsylvania administrator never had, nor was permitted to have, any control of the assets in another state.

Adjudication. O. C. Allegheny Co., Sept. T., 1923, No. 617.

*Felix B. Snowden,* for accountant; *J. O. Wicks,* for exceptant.

MILLER, P. J.—The question is whether personal tangible assets located in the State of Montana and not within this jurisdiction, and being distributed under decree of the Montana courts to the parties entitled, are subject to the Pennsylvania inheritance tax.

The decedent died intestate Sept. 25, 1920, domiciled in Allegheny County, Pennsylvania. Among the assets inventoried and brought into the account were 33 horses, valued at $2500; 304 cows and calves, valued at $15,940; 37 hogs, valued at $495; 225 tons of hay, valued at $4500; 500 bushels of oats, valued at $320; 80 bushels of wheat, valued at $152; 150 bushels of potatoes, valued at $150; fodder and straw, valued at $267; 7 sets of harness, valued at $250; saddles and collars, valued at $85, and tools valued at $700; a total of $25,359. The foregoing assets, *inter alia,* were administered upon by original grant of letters in Montana under its laws, and distribution of the proceeds made directly to the widow and children of the decedent; they

were included in the inventory filed here and in the account at the insistence of the taxing department here, with the understanding on the part of the learned counsel for the estate, as stated by him, that the question of liability for tax should be determined upon the fact of their separate administration and distribution and without any binding effect by reason of their inclusion in the inventory and account. While these assets appear in the account and credit is claimed for them as distributed under the laws of Montana, as a fact, not one dollar of these assets was ever received by the domiciliary administratrix here, but passed directly through a foreign administration to those entitled thereto under the laws of the foreign state. The decree, certified and attached to the statement, shows not only complete administration and payment of all debts; it also includes the inheritance taxes of the State of Montana.

It is urged, on the part of the estate, that the fiction *mobilia personam sequuntur* was not followed in Small's Estate, 151 Pa. 1, since the fact was that the tangible personal property there in question was within the State of Pennsylvania, protected by its laws, and should be subject to the liability for tax; from which it is contended that the converse of the proposition ought to obtain, to wit, that when personal tangible assets of the kind in question at bar are not, and never were, within the jurisdiction of the State of Pennsylvania, they did not need the protection of the laws of Pennsylvania, and, therefore, were not subject to its charges. There is much to be said for this contention.

However, the Commonwealth relies upon Frick's Estate, recently decided in this court, and this branch of it affirmed by the Supreme Court in 277 Pa. 242, where the tangible personal property of Mr. Frick, consisting of automobiles and the like in Massachusetts, and furniture, paintings, antiques, etc., in the State of New York, were held subject to Pennsylvania inheritance tax on the ground, primarily, that the tax claimed is not on property, but on the right of transmission.

But in the case at bar the facts are materially different. In Frick's Estate, all of his property was brought by inventory and otherwise into the accounts in Pennsylvania, and transmission thereof to those entitled thereto is under the laws of Pennsylvania; no other court nor jurisdiction has been called upon to award the Frick Estate to those entitled thereto.

In the case at bar, these assets never were brought into the State of Pennsylvania, either as a fact or by inference. The agreement between counsel for the estate and the representative of the taxing department here, that a notation thereof shall be made in this inventory for the purpose of an adjudication, does not bring these assets into this State nor confer any power upon the State of Pennsylvania or its courts to transmit this Montana property to those entitled thereto.

On the contrary, the domiciliary administrator in Pennsylvania never had, was not permitted to have, any control or jurisdiction of the assets in the State of Montana. Under the laws of that state original administration was there granted, complete settlement was there made, and the balance of the estate was awarded, not through the State of Pennsylvania, nor under its laws, necessarily, but by the State of Montana under its laws, to those entitled thereto. Montana exercised its right to the inheritance tax there, on the ground of its transmission rights of the assets there. How can Pennsylvania claim a second inheritance tax on these same assets, which are not transmitted through it, especially when these assets are by the law of Montana wholly within its control?

### Hogg's Estate.

It follows that the state-given right of transmission upheld in Frick's Estate has no application to the facts at bar; nothing was transmitted from Montana, through any judicial or other tribunal, into Pennsylvania. What was done—and, we must assume, legally done under the statute of original administration in Montana—was to award the balance of the fund to those entitled thereto, without regard to any other jurisdiction or to any other authority.

Suppose that the entire estate of decedent had consisted of his property in Montana, and that administration thereof had been made and distribution awarded in the State of Montana to those entitled thereto, and the awards paid to the respective parties, how could the State of Pennsylvania have claimed a tax, and upon whom would it have levied it, and how would it have collected it? The law of the State of Pennsylvania is that there shall be retained out of the assets in its control, and shall be paid, this tax. Certainly, in the illustration given, there is no power of retention by any one in the State of Pennsylvania, and there is nothing in the tax laws of the State which would warrant an attempt to collect from the distributees that which they had received from a foreign jurisdiction.

The maxim *mobilia personam sequuntur* is not a fixed law, but a legal fiction resorted to as a matter of convenience, and to prevent injustice, as said in Union Refrigerator Transit Co. *v.* Kentucky, 199 U. S. 194, "may not apply to tangible personal property permanently located in another state, where it acquires a *situs* and is subject to be there taxed, irrespective of the domicile of the owner. An attempt on the part of the state in which the owner is domiciled to tax such property amounts to a deprivation of property without due process of law." So, in the Estate of Weaver, 110 Ia. 328, the court say that, while it is a general rule that personal property follows the domicile of the owner, yet it is not true that, for the purpose of taxation, tangible property may not have a *situs* other than that of the domicile of the owner, the court further saying that if the property (there, appearing to be cattle) had been distributed in the State of Missouri, as under the law it might have been (here under the Montana intestate law), there would be no doubt that it would not have been subject to the tax imposed by our law.

That this maxim is not a fixed law, but changes with the facts, is illustrated in many Pennsylvania cases, notable among which are Arbuckle's Estate, 252 Pa. 161, where it prevailed, and Hostetter's Estate, 267 Pa. 193, where it did not. So, also, it has been differently held in the Supreme Court of the United States, as shown in the cases from that court cited in the opinions of this court and the Supreme Court of Pennsylvania in Frick's Estate, 277 Pa. 242. Moreover, by the terms of the Act of June 20, 1919, P. L. 521, under which the Commonwealth claims the tax, it would seem to be barred here; for section 1 provides that the tax shall be imposed upon the transfer of any property . . . by the intestate law of this Commonwealth, irrespective of the *situs* of the property. The property in question has not been transferred by the laws of this Commonwealth, but by a foreign jurisdiction under its laws, fastened upon property wholly within its jurisdiction.

Being of the opinion that the facts in the case at bar differentiate it materially from the facts in Frick's Estate, and that this tangible personal property of the decedent was never within the State of Pennsylvania for the purpose of transmission, the claim of the Commonwealth must be refused.

From Edwin L. Mattern, Pittsburgh, Pa.