## Canuso Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Irvin Stander*, for Commonwealth, exceptant.

*John Michael Doodan*, contra.

LEFEVER, J., May 3, 1957.—The narrow, but novel, question before the court is whether, in computing the value of a life estate for transfer inheritance tax purposes, the taxpayer is entitled to a deduction for the amount of the Federal estate taxes apportionable to the principal of the trust upon which the life estate is based.

Testator died on November 8, 1952. He left an estate of $612,939, which he disposed of by will. Inter alia, he bequeathed the sum of $25,000 in trust, to pay the income therefrom to Mrs. Margaret Lyle for life, with remainder over upon her death. The Register of Wills of Philadelphia County appraised the life estate of Mrs. Lyle for inheritance tax purposes at a value of $10,266.25, and assessed a 15 percent tax amounting to $1,533.94. In computing the value of the life estate, the register used the $25,000 face amount of the trust, without deducting the proportionate share of the Federal estate tax of $8,126 which was found to be allocable to and borne by such trust since the will contained no tax-free clause in relief of apportionment of Federal estate taxes. This $25,000 was capitalized at five percent on a life expectancy of 8.118 years based upon the Northampton Mortality Tables for a woman 61 years old (the age of life tenant).

The life tenant appealed from this tax assessment on the grounds: (1) That the register erred in using $25,000 as the base, instead of $16,874, the net amount of the trust corpus after deducting the proportionate share of the Federal estate tax in the amount of $8,126; and (2) the register erred in using the arbitrary five

percent rate of income to capitalize the value of the life estate, instead of the rate of income actually expected on this trust, viz., approximately 3½ percent annually. Judge Saylor, the hearing judge, sustained the appeal of the life tenant on point one, and dismissed the appeal on point two. The Commonwealth filed exceptions to the opinion of the hearing judge, but the life tenant filed no exceptions.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, art. II, sec. 10, provides that the register of wills shall appoint an appraiser "to appraise the value of the property or estate of which such decedent died seized or possessed and hereinbefore subjected to tax". It further provides that: "Such appraiser shall make a fair, conscionable appraisement of such estates, and assess and fix the cash value of all annuities and life-estates growing out of said estates, upon which annuities and life-estates the tax imposed by this act shall be immediately payable out of the estate at the rate of such valuation."

A portion of the life tenant's argument was forceably presented, and adopted by this court, in an opinion by Judge Gest (which was affirmed per curiam by the Supreme Court) in Knight's Estate, 261 Pa. 537 (1918). Judge Gest stated, page 539:

"The tax which the Commonwealth exacts is five per cent. of the clear value of all estates passing from the person dying possessed thereof to any other persons other than those specifically exempted, and every legal charge against the estate must therefore be deducted before the clear value can be ascertained. Obviously the clear value taxable under the law of this State can only be thus ascertained after the payment of the tax due to the United States. As Judge Solly, of the Orphans' Court of Montgomery County, well says in Bell's Est., 34 Montg. 9:

" 'Otherwise a legatee, devisee, or heir or next of kin is paying the Commonwealth a tax upon something which has not passed and never will pass to him. Such a result would be unjust and highly inequitable and shocking to one's sense of reason and justice.'

"Indeed, a case might readily be imagined where concurrent taxation at a high rate might absorb the entire estate which would then become almost like the Hereditas damnosa of the early Roman law." See also Otto's Estate, 257 Pa. 155.

This court, as presently constituted, concurs in the views so well expressed by Judge Gest. It seems harsh, if not unconscionable, for the Commonwealth to tax property which never reaches the beneficiary. However, the right to leave property by will is a matter of grace by the sovereign, not a matter of right in the citizen.

Knight's Estate was decided before the passage of the Transfer Inheritance Tax Act of 1919. The Inheritance Tax Act of May 6, 1887, P. L. 79, which was invoked in Knight's Estate, contained no language with regard to Federal estate taxes. It is significant that subsequent to the decision in Knight's Estate the legislature in section 2 of the 1919 Inheritance Tax Act spelled out the deductions which were to be allowed and those which were not, namely:

"In ascertaining the clear value of such estate, the only deductions to be allowed from the gross values of such estate shall be the debts of the decedent, reasonable and customary funeral expenses, bequests, or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection

of monuments or grave stones, grave and lot markers and the expenses of the administration of such estates, and *no deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States or to any other State or Territory, . . .*": 72 PS §2302. (Italics supplied.)

As pointed out by Mr. Justice Frazer in his dissenting opinion in Frick's Estate, 277 Pa. 242, 268: "The statute was passed to overcome the decisions of this court in Otto's Estate, 257 Pa. 155, and Knight's Estate, 261 Pa. 537, wherein we held that, in computing the net value of the estate, taxes due the federal government and foreign states should be deducted."

The quoted language of the 1919 Inheritance Tax Act does not specifically refer to valuation of life estates. However, the phrase: "In ascertaining the clear value of such estate" clearly refers to the first sentence of section 2, namely: "All taxes imposed by this act shall be imposed upon the clear value of the property subject to the tax. . . ." This language is all-embracing. It includes life estates as well as outright gifts.

It has been unequivocally decided that the quoted language taxes the full amount of outright gifts *without* deduction for Federal estate taxes. Thus in Kirkpatrick's Estate, 275 Pa. 271, the Supreme Court held, page 275:

"This is plain and unambiguous language, holding that the federal tax should not be deducted in determining the amount of inheritance tax, and, since there is no constitutional provision forbidding this, we must enforce it as written."

And in Frick's Estate, 277 Pa. 242, 250, it was stated:

"'It is clear from these sections that the tax is to be levied upon the 'clear value' of the entire estate . . . after deducting only 'the debts of the decedent and the expenses of the administration' of such estate. The appraisement to be made is not of the legacies or devises but of the whole estate of a decedent; the debts and expenses of administration are not to be deducted from any particular gift or gifts, but from the whole estate, and the taxes paid to the United States or to any other state or territory, if permitted to be deducted, would have been from the whole estate. We therefore conclude that it is the entire value of the estate, less the credits specified, which forms the basis of the tax, and not the amounts received by the particular legatees; hence, as stated in Knowlton v. Moore, 178 U. S. 41, that which the State 'taxes is not the interest to which some [or many a] person succeeds on a death, but the interest which ceased by reason of the death.' Since this is the true construction of the Act, much of the argument made by these Appellants, founded as it is upon the contention that the tax is levied only upon the particular gifts, when and as received, becomes ineffective because it has no relation to the actual status."

It seems clear that the same rule should apply to life estates. This is the conclusion reached by President Judge Copeland in Cowan's Estate, 78 D. & C. 543, 548: "The only Pennsylvania Inheritance Tax due at this time is on the appraisal of the life estate and it is hardly necessary to say that the Pennsylvania Inheritance Tax is computed on an estate before such tax is deducted. With reference to computing the inheritance tax on the life estate without first deducting the Federal Estate Tax, the Act of June 20, 1919, P. L. 521, art. I, sec. 2, as amended, provides that 'no

deduction whatsoever shall be allowed for or on account of any taxes paid on such estates to the Government of the United States or to any other State or Territory' ": Citing and quoting Kirkpatrick's Estate, 275 Pa. 271.

Irrespective of the fairness of the tax, the court is bound to apply it strictly, as written. Accordingly, we rule that the disputed language applies to life estates as well as to outright gifts.

There is nothing in the statute, however, which authorizes or directs the appraiser to use an arbitrary and unrealistic rate of the income in fixing the value of the life estate. Our experience with countless trust estates indicates that the average trust estate for a number of years in the past has not produced, and does not now produce, a net income of five percent. This is particularly so where, as here, the trustee is limited to so-called "legal" investments. Moreover, the evidence in this case is that the corporate common trust fund in which the trust corpus is invested now yields a gross return of 3.67 percent per annum, the highest return in the history of the fund. How then can the appraiser or his department justify as "fair and conscionable" an appraisement based upon a much higher yield? We understand that this rate was established 35 years ago and apparently has never been challenged. However, in the light of current and recent experience, it seems that a thorough, penetrating and exhaustive review of the department's practice and procedure is overdue. The situation is aggravated where the trust corpus, as here, is reduced by approximately one third through Federal estate tax. We, therefore, disagree with the learned hearing judge that for purposes of expediency the Commonwealth should be permitted to use the unrealistic and excessive rate of five percent in computing the tax. We are not prepared, however, to say what the proper rate

should be in this case. That is a matter for determination by the hearing judge in the light of the evidence now before him, and any additional evidence on the subject to be adduced at a further hearing.

No exceptions were filed by the life tenant to the ruling of the hearing judge approving the use of five percent as the measuring rate of yield on the trust corpus. Undoubtedly, this was because of the favorable ruling by the hearing judge on the more substantial point involved and the direction by the hearing judge that the matter "be remanded to the Register of Wills who is directed to reassess the tax on the life estate of Margaret Lyle . . .". Fairness and equity require that the life tenant now be afforded an opportunity to file exceptions to this portion of the hearing judge's ruling. To that end, the life tenant is given 15 days from the date hereof to file such exceptions.

For the reasons set forth above, the exceptions filed by the Commonwealth are sustained pro forma; leave is given to the life tenant to file exceptions to the other rulings of the hearing judge within 15 days hereof, and if such exceptions are filed the record is recommitted to the hearing judge for the filing of a supplemental opinion. If exceptions are not filed in accordance with the leave herein granted, the exceptions of the Commonwealth are finally sustained.

*Supplemental Opinion*

LEFEVER, J., December 13, 1957.—Margaret Lyle, life tenant of a trust in the amount of $25,000, appealed to this court from a transfer inheritance tax assessment on the grounds: (1) That the register erred in using $25,000 as the base, instead of $16,874, the net amount of the trust corpus after deducting the proportionate share of the Federal estate tax in the amount of $8,126, and (2) that the register erred in

using an arbitrary five percent as the rate of annual income to capitalize the value of the life estate, instead of the lower rate of income actually expected in this trust. The hearing judge sustained the appeal on point (1) and dismissed the appeal on point (2). The Commonwealth filed exceptions to the opinion of the hearing judge, but the life tenant filed no exceptions.

On May 3, 1957, we filed an opinion in which we sustained pro forma the exceptions of the Commonwealth and granted special leave to the life tenant to file exceptions with regard to the correct rate of income upon which the value of the life estate should be calculated.

The life tenant filed such exceptions. The matter was then settled between the parties by agreement that the life estate would be calculated upon an income at the rate of four percent per annum.* Accordingly, these exceptions were withdrawn and are not now before the court.

The life tenant also made an application for reargument on the Commonwealth's exceptions. This application was granted and reargument was heard orally by the court and further briefs were presented. After careful review and reconsideration of the case in the light of the reargument and the additional briefs, we have decided to adhere to the conclusion reached in our original opinion of May 3, 1957.

Accordingly, the exceptions of the Commonwealth are herewith finally sustained for the reasons set forth in that opinion.

---

* The Special Assistant Attorney General informed the court that as a result of this case the Attorney General had ordered a study made of the appropriate formula for calculating life estates under current conditions, including the proper interest rate and mortality tables.